## JAUDON v. DUCKER.

1. In construing a will, the first and great object is to ascertain the intention from the paper itself in the light of the circumstances surrounding the testator when he wrote it.
2. A testator, possessed of an estate consisting almost entirely of lands, bequeathed three pecuniary legacies and devised a small part of his realty, and then bequeathed and devised the "rest and residue of his estate, real and personal," to other parties. *Held,* that the pecuniary legacies were a charge upon the residuary estate.

Before HUDSON, J., Charleston, March, 1887.

This was an action by John C. Jaudon, assignee of Boy D. Sonnichsen and others, pecuniary legatees of Henry Williams, deceased, against the executor and other beneficiaries under said will. The opinion states the case.

*Messrs. Lord & Hyde*, for appellants.

*Messrs. Hayne & Ficken*, contra.

October 6, 1887. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On January 24, 1884, Henry Williams, of Charleston, executed his last will and testament, by the first clause of which he bequeathed $1,000 to Dorothea Catrina Sonnichsen, and to Peter F. Sonnichsen the same amount, and to Boy Diedrich Sonnichsen $2,000. By the second clause he devised and bequeathed to his wife for life with remainder over, his residence and household furniture, and eight lots of land with the buildings thereon, "situate on Williams court, in Charleston." And by the third and fourth clauses he provided as follows: "It is my will that as soon as possible after my death the rest and residue of my estate, real and personal, shall be divided into two equal parts, the said division to be made by three appraisers, one to be appointed by each of my daughters hereinafter named, and the third by the trustee hereinafter appointed. One of the said equal parts of the rest and residue I give, devise, and bequeath unto Christopher G. Ducker, his

heirs, executors, administrators, and assigns, upon the trusts, nevertheless, and for the ends, uses, intents, and purposes following, that is to say, upon trust that he, the said Christopher G. Ducker, shall and do pay unto Alice Barberry, wife of John B. Miller, the dividends, interest, and annual product of the said one-half part of the rest and residue when and as the same shall become due and payable, for and during the life of the said Alice Barberry, and from and after the death of the said Alice in trust," &c. Precisely the same provision was made as to the other moiety of "the rest and residue" of the estate in favor of his other daughter, Henrietta Ann, wife of Luder Sahlmann, &c.

In the eighth clause the said Christopher G. Ducker was appointed executor, with full power to sell and convey any and all parts of the estate, "real or personal, at public or private sale, for the purpose of making a partition and division of the same as provided."

On November 4, 1885, the testator executed a codicil to his will, by which he made an additional pecuniary legacy of $1,000 in favor of John Sonnichsen, and on December 4, 1885, died.

The executor qualified, and, as we suppose, delivered to the widow the lots and household furniture specifically devised and bequeathed to her ; but finding that the remainder of the personal property was appraised at only $1,399.68, and the claims against the estate amounted to $4,865, and the real estate (exclusive of that specifically devised to the widow) was valued at $40,340, he declined to pay the several pecuniary legacies given by the will, upon the ground that they are only payable out of the personalty of the estate, which is not even sufficient for the payment of the debts. Thereupon this proceeding was instituted for the recovery of the legacies, the legatees claiming that the legacies are charged upon the real as well as the personal property of the estate, except that specifically devised to the widow.

The cause came on to be heard by Judge Hudson, who held principally upon the authority of *Moore* v. *Davidson* (22 *S. C.*, 94), that the pecuniary legacies are chargeable upon the real as well as the personal property disposed of by the residuary clause of the will ; that "the rest and residue of the estate, real and

personal," which was given to the trustee, Ducker, for the daughters, meant that which might remain after the specific provision for the widow and the legacies had been carved out of the estate, &c., and ordered the executor, Ducker, to pay the legacies within a time named, or in case of his failure to do so, that so much of the real estate as might be necessary for that purpose be sold at public outcry, &c.   From this decree the defendants appeal to this court upon the ground, "that the presiding judge erred in holding that the legacies given to the plaintiffs in his will by the testator, Henry Williams, are a charge upon 'the rest and residue' of the real estate of the said testator," &c.

In the construction of a will, of course, the first and great object should be to ascertain the intention of the testator, and that intention must be gathered from the paper itself, assisted, it may be, by the circumstances which surrounded the testator at the time of its execution, such as the state of his family and condition of his property, &c.   Now, if the will of Henry Williams were read to one, having no knowledge of the formal rules of construction, but thoroughly familiar with the English language and the proper force of words, we cannot doubt his response would be, that the testator intended the specific gift to the widow and the pecuniary legacies first given to be first and at all events provided for out of the whole estate, without any reference whatever to what proportion of it was realty and what personalty, and that only what remained of it—"the rest and residue of the estate, real or personal"—should go to the trustee, Ducker, for the daughters.

It is, however, contended that according to certain rules of construction, the lands are not the proper fund from which to pay money legacies ; and that the words so often repeated in the will, "rest and residue of my estate, real and personal," are not in this State sufficient to charge the legacies upon the large real estate, which must all go undiminished to the trustee for the two daughters, leaving the pecuniary legacies entirely unpaid.   We cannot agree that such construction would carry out the intention of the testator, or is imperatively demanded by any rule of interpretation.   It may be true that formal rules may be useful in ascertaining the intention, but certainly not when they defeat the

manifest intent. By the old English law personal property was considered of little consequence in comparison with real estate, which is more stable in character, and there was a constant solicitude to protect the real estate for the heir; but in later times, and especially in this country, personalty has increased in its relative importance. If we must assume that the testator knew the difference between pecuniary legacies and devises of real estate, and the general rule as to the fund out of which legacies should be paid, we must, at the same time, assume that when the codicil was executed in November, 1885, just one month before his death, the testator had at least such general information of the condition of his own estate as to know that it consisted almost entirely of lands, and that unless the legacies, which he was so careful to make, were to be paid out of the proceeds of real estate, they would not be paid at all.

So far as concerns the intermingling of the two kinds of property, this case seems to us to be identical with that of *Moore* v. *Davidson* (22 *S. C.*, 92), cited by the judge below. The words in that case were, "the remainder of my property, both real and personal," while in this they are "the rest and residue of my estate, real and personal." In delivering the judgment of the court in that case, Mr. Justice McIver said what applies with equal force to this: "Nor is there any warrant for applying the term 'remainder' to the personal estate alone. It is true, that in the absence of any direction to the contrary, the legacies, as well as the debts, would be payable out of the personal estate, and the testator must be presumed to have known that this was the law; but notwithstanding this, having, as he did, the right to make other provision for the payment of the debts and legacies, what did he do? He made no distinction whatever between his real and personal estate; but, on the contrary, blended it into one common mass and gave it, or rather what remained of it (after the payment of the legacies and debts), to his sons. His language is: 'I will and bequeath (my debts being paid) the remainder of my property, both real and personal, to my sons.' Where is the warrant for confining the term 'remainder' to the personal property alone? The testator has not done so, but, on the contrary, according to strict grammatical construction, the term 'remainder'

applies equally to the real as well as to the personal property," &c. Substituting for the word "remainder" the phrase "rest and residue," and what is above said applies precisely to this case.

But it is urged that in the case of *Moore* v. *Davidson*, there was no preceding devise of real estate, and the use of the word "remainder" could have reference only to the diminution caused by the payment of the legacies; whereas in this case there was a preceding gift of both real and personal estate to the widow, and the words "rest and residue" must be considered as having reference alone to that provision. We are not able to say that this circumstance should absolutely control the construction, for the pregnant fact still remains that the testator himself blended his real and personal property together as one mass, and that mass was known to him to be the only fund out of which the legacies could be paid, if paid at all. As it seems to us, the terms of the will, construed in the light of the surrounding circumstances, show that the testator, in disposing of his estate, considered it as a whole, without regard to nice distinctions between the realty and personalty of which it was composed. This he had the right to do.

We think this construction is not in any manner inconsistent with the doctrine announced in the case of *Laurens* v. *Read* (14 *Rich. Eq.*, 263), but, on the contrary, is in exact conformity thereto. In that case the learned justice, who delivered the opinion of the court, undertook to arrange the cases in which lands devised have been charged with the payment of legacies under six distinct heads, several of which, as it seems to us, would embrace this case—certainly the *sixth*, which is stated as follows: "Where, at the making of the will, the testator must have known that the legacies could not be paid without the aid of the real estate. This head is plainly illustrated by the case of *Nichols* v. *Postelthwaite*, 2 *Dall.* (*Pa.*), 131. To it also may be referred the case of *Hassanclever* v. *Tucker*, 2 *Binn.*, 525, where it is said that 'the personal estate was nominally adequate to pay debts and legacies, but was really insufficient,' and 'if the legacies were not to be paid out of the land, they were a mockery of benevolence,'" &c.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.