## ALLEN v. RUDDELL.

1. POWERS—MORTGAGE—SALE.—A power to sell for reinvestment does not confer a power to mortgage.
2. IBID.—IBID.—Where no power to mortgage is conferred, there can be no power to convey lands in satisfaction of mortgage debt.
3. WILLS.—Legacy construed not to be a charge upon lands devised. Distinguished from *Moore* v. *Davidson*, 22 S. C., 92, and *Jaudon* v. *Ducker*, 27 S. C., 295.
4. PARTITION—EVIDENCE not sufficient to sustain parol partition.
5. APPEAL—SUPREME COURT—EXCEPTIONS.—A matter not passed upon by trial Judge will not be considered by this Court, unless his failure to do so is excepted to.

Before EARLE, J., Hampton, November, 1896.   Affirmed.

Action by Alice N. Allen against W. G. Ruddell, J. H. Ruddell *et al.* The property in question passed under the following will:

State of South Carolina, County of Beaufort.   Know all men by these presents, that I, Hattie C. Ruddell, of the county of Beaufort and State of South Carolina, being in ill health but of sound and disposing mind and memory, do make and publish this my last will and testament, hereby revoking all former wills by me at any time heretofore made.   And as to my worldly estate and all the property, real and personal or mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath, and dispose thereof in the manner following, to wit: First: My will is, that all my just debts and funeral expenses shall by my executor (hereinafter named) be paid out of my estate as soon after my decease as shall by him be found convenient.   Item: I give, devise, and bequeath to my beloved husband, John H. Ruddell, $7,000—$4,000 cash, balance in annual instalments from net proceeds from estate.   Item: I give, devise, and bequeath to my beloved children, Walter, Alice, Norma, Julian, Munford, Malcolm, Leonard, and such child or children as may hereafter be born to me, all the balance of my estate, real, personal, and mixed, to be divided in equal proportions, share and share alike, as hereinafter directed, said estate consisting of all the following parcels or tracts of land: First, that portion of land, situate in county and State aforesaid, and known as "Joint Stock" plantation; second, that portion of land, situate in same county and State, and known as "New Castle" plantation; third, that portion of my land, situate in same county and State, known as "Sandy Hook" plantation; fourth, that portion of my land, situate in same county and State, containing 100 acres, more or less, originally cut off from the "Sandy Hook" plantation, on which my residence stands, and

known as "Ivanhoe," together with all the stock, provisions, horses and mules, farming implements, gears, wagons, and all the goods and chattels connected with or attached to the aforesaid plantation, and all the buildings and appurtenances thereon, and also balance of stock moneys on hand and due me at the time of my decease. And I hereby do direct that my executor, hereinafter named, shall, as soon as practicable, collect all the moneys that may be due me at the time of my decease and invest the same for the best interest of my children aforesaid and mentioned, in such manner as his judgment may suggest. I also direct, and fully empower and authorize, that my executor shall, at any time previous to the twenty-first birthday of my youngest child, sell or dispose of any portion of my above devised and bequeathed premises (except the plantation known as "New Castle" and except the place known as "Ivanhoe"), and reinvest in such manner as his discretion shall suggest for the best interest of said beloved children. And I hereby give him full power and authority to do the same. I direct that the place known as "Ivanhoe" and the plantation known as "New Castle" shall not be sold or otherwise disposed of, except the same be ordered by a court of competent jurisdiction. Proceeds to be applied, in the event of such sale, strictly in accordance with the decree of said court, for the benefit of my aforesaid children. And that any portion or all of the balance of my estate shall be disposed of or sold at the discretion of my said executor as aforesaid. I hereby reiterate and confirm it. It is my will that no actual division of my estate take place until my youngest child shall have attained the age of twenty-one years ; but being uncertain what contingencies may arise, I hereby direct that my said executor shall have full power and authority to deliver to each of my said children the share or proportion of my estate due him or her as they successively attain to the age of twenty-one years, if in his judgment their interest will be thus best subserved. Impressed with the uncertainty of human life, it is my will,

in the event of the death of either of my said beloved children without issue, or before attaining his or her majority, that his or her share shall be equally divided among my surviving children; and should my beloved husband, John H. Ruddell, survive all my children (they dying without issue), it is my will that the entire estate shall pass to my said beloved husband, John H. Ruddell; and shall my said children survive the said John H. Ruddell, leaving no issue, and all die before attaining their majority, it is my will, and I hereby direct, that the portion of my estate hereinbefore bequeathed to my children, said to be equally divided between Mrs. Kate Dell, of Scriven County, Georgia (formerly Miss Kate McCall), and Hattie Crockett, daughter of Mr. and Mrs. K. A. Crockett, also of Scriven County, Georgia, unless otherwise changed and directed by the will of my beloved husband, John H. Ruddell; and I hereby give my beloved husband full power and authority to change it, if in his judgment he may think it best. Lastly, I do hereby———and appoint my said beloved husband, John H. Ruddell, to be the executor of this my last will and testament, conferring upon him full power and authority to exercise his discretion, as aforesaid, and to appoint a successor or successors, with power as he shall by will direct. In testimony whereof, I, the said Hattie C. Ruddell, have hereunto this, my last will and testament, contained in two sheets of paper, and including five pages, and to every page subscribed my name, and to this, the last sheet thereof, subscribed my name and affixed my seal. This 26th day of March, in the year of our Lord 1877. Hattie C. Ruddell. [L. S.]

From judgment for plaintiff, defendants, J. H. Ruddell and W. W. Morris, appeal.

*Messrs. E. F. Warren* and *A. M. Boozer*, for appellants, cite: *Rule as to construction of wills:* 1 N. & McC., 69; 2 Bay, 255; 1 Harp. Eq., 272; 9 Rich. Eq., 19; 63 N. C.,

360; 3 N. J. Eq., 353. *Party should not seek cancellation of instrument from which he received benefits:* 3 Rich., 164; 27 S. C., 300; 4 McC., 247.

*Messrs. J. L. Tobin, B. T. Rice,* and *W. S. Tillinghast,* contra, cite: *Intention to charge real estate:* 5 S. C., 218. *No latent ambiguity, terms of will conclusive:* 46 S. C., 230; 20 S. C., 330; 65 Me., 102. *Power to sell, no power to mortgage:* 6 S. C., 199; 17 S. C., 553.

Feb. 25, 1898.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   Mrs. Hattie C. Ruddell died about the 31st of March, 1877, seized and possessed of a considerable estate, both real and personal, which she disposed of by her will, bearing date the 26th of March, 1877, a copy of which, as set out in the "Case," should be incorporated in the report of this case.   Of this will the defendant, J. H. Ruddell, was appointed executor and duly qualified as such.   The testatrix left surviving her her husband, the said J. H. Ruddell, and four children, viz: Walter G., Alice Norma (who has since intermarried with Paul H. Allen), Julian Munford, and Malcolm Leonard, the last two of whom have died since the death of the testatrix, unmarried and childless, and their shares, by terms of the will, became vested in their surviving brother, Walter G. Ruddell, and their sister, Alice Norma Allen; and thus the plaintiff and the defendant, Walter G. Ruddell, are now entitled to the property devised by the testatrix to her four children.

In the first item of the will, the testatrix directs that her debts and funeral expenses shall be paid by her executor out of her estate as soon after her decease as he may find it convenient to do so.   The next item reads as follows: "I give, devise and bequeath to my beloved husband, John H. Ruddell, $7,000, $4,000 cash, balance in annual instalments from net proceeds from estate." In the next item she gives, devises and bequeaths to her four children, naming them, and such

child or children as may thereafter be born to her, "all the balance of my estate, real and personal, and mixed, to be divided in equal proportions, share and share alike, as hereinafter directed, said estate consisting of all the following parcels or tracts of land:" first, a place known as "Joint Stock;" second, a place known as "New Castle;" third, a place known as "Sandy Hook;" fourth, a place originally cut off from Sandy Hook, known as "Ivanhoe;" together with "all the stock, provisions, horses and mules, farming implements, gears, wagons, and all the goods and chattels connected with or attached to the aforesaid plantations, and all the buildings and appurtenances thereon, and also balance of stock, monies on hand and due me at the time of my decease." The will also contains the following provisions: "I also direct, and fully empower and authorize, that my executor shall, at any time previous to the twenty-first birthday of my youngest child, sell or dispose of any portion of my above devised and bequeathed premises (except the plantation known as 'New Castle,' and except the place known as 'Ivanhoe'), and reinvest in such manner as his discretion shall suggest for the best interests of said beloved children;" and proceeds to forbid, expressly, the executor from selling or otherwise disposing of, either "New Castle" or "Ivanhoe." The will further provides that no division of her estate shall be made until the youngest child attains the age of twenty-one years; but authorizes the executor to deliver to each child, as he or she arrives at the age of twenty-one years, the share or proportion of the estate to which such child may be entitled, if, in the judgment of the executor, the interests of such child shall be thus best subserved.

It appears from the testimony that the executor, upon the death of this wife, took charge of the entire estate and managed it very much as if it had been his own; and to say the least of it, his management was far from conducive to the interests of the persons entitled thereto. He allowed one of the places—"Sandy Hook"—to be sold for taxes, and bid off by his counsel, the late Jeff. Warren, Esq., and on the 1st

day of November, 1889, he, as executor, made a deed therefor to Mr. Warren, in which the consideration recited was $7,000; and in a short time thereafter, to wit: on the 14th of December, 1889, Mr. Warren reconveyed the place to the said J. H. Ruddell, individually, by deed, in which the consideration recited was $8,000; but Mr. Ruddell, in his testimony, says that no money passed between Mr. Warren and himself, when these deeds were made. Again, it appears that the said J. H. Ruddell borrowed from the Mutual Life Insurance Company the sum of $1,500, securing the payment thereof by a mortgage on the "Sandy Hook" place, bearing date 11th of April, 1890, and subsequently borrowed another sum of $1,500 from the same company, securing the payment of the same by another mortgage on "Sandy Hook," bearing date 4th April, 1891; and when these debts became payable, the said J. H. Ruddell made a deed for the "Sandy Hook" place to the defendant, W. W. Morris, the secretary of said insurance company, in satisfaction of the debts secured by the said mortgages. It further appears that the said J. H. Ruddell, at some time, *when* does not appear, except that it was while the plaintiff herein was a minor, had three commissioners to lay off to the defendant, W. G. Ruddell, a portion of the place known as "New Castle," as "a fair proportion of the remaining estate," under the will of his mother. These three commissioners, in signing the return, if it can be so called, professed to represent, one of them W. G. Ruddell, another J. H. Ruddell, and the other the plaintiff, Mrs. Allen. About the same time, according to the testimony of John H. Ruddell, he gave to the plaintiff the place known as "Ivanhoe," together with 150 acres to be cut off from the place called "Sandy Hook;" and this he says gave W. G. Ruddell about 450 acres, the plaintiff about 250 acres, and he reserved for himself about 1,000 acres, which he says was satisfactory to all the parties; but this is denied by the other parties, who testify that they never did agree to accept it as their share of their mother's estate. Inasmuch, however, as it is admitted that the plain-

tiff was a minor at the time of this so-called partition, and there is no evidence that she ratified it after she attained her majority, this conflict in the testimony becomes unimportant. It does not appear what were the respective ages of the children of the testatrix, except that the testimony shows that the plaintiff was born on the 9th of February, 1870; and she, we presume, was the youngest child, as she is so spoken of in the Circuit decree.

The main object of this action is to have the mortgages above referred to, and the deed from J. H. Ruddell to W. W. Morris, declared void and set aside, and for a partition of the land between the plaintiff and the defendant, W. G. Ruddell, according to their respective rights. It is true, that in the complaint there is a demand that J. H. Ruddell shall account, as executor, and for judgment for any balance that may be found against him on such accounting; but that matter does not appear to have been considered or passed upon by the Circuit Judge, and there is no exception to his failure to do so, and hence it is not before us for consideration. The case was heard by the late Judge Earle upon the testimony as reported by the master, which is set out in the "Case," and he rendered his decree, in which, without stating the facts, he simply states the questions involved, and renders judgment that the said mortgages and the deed from J. H. Ruddell to W. W. Morris be cancelled and set aside; that the legacy to the defendant, J. H. Ruddell, is not a charge upon the real estate devised to the children of testatrix; and that plaintiff is entitled to partition, but he adds: "The rights of said cotenants (the plaintiff and defendant, W. G. Ruddell), at request of counsel, are reserved, with leave to apply, at the foot of this decree, for any relief between themselves to which they may be entitled, in the event that negotiations now pending for a friendly adjustment of their rights shall not be successful."

From this judgment the defendants, J. H. Ruddell and W. W. Morris, appeal, upon the several grounds set out in the record; but these grounds need not be stated here, as

the questions they present are stated both in the Circuit decree and in the argument of counsel for the appellants substantially in the same way.

The first question, as stated by the Circuit Judge, is as follows: "1. Did the executor, John H. Ruddell, have the power, under the will of the testatrix, Mrs. Hattie Ruddell, his wife, to execute the two mortgages for $1,500 each in favor.of the defendant, the Kentucky Life Insurance Company, upon the trust estate, said mortgages being more particularly described in the complaint?" It is very clear that there was no error on the part of the Circuit Judge in holding that the executor was not invested with any such power. While the will confers large powers upon the executor, there certainly is no power given him to mortgage or in any way encumber the lands committed to his charge. On the contrary, the exercise of such a power would be inconsistent with the duties imposed upon him, and would probably be destructive of the interests committed to his charge. Nor can the power to mortgage be inferred from the power to sell certain portions of the real estate for the purposes of reinvestment, which is conferred upon the executor, with certain limitations hereafter to be noticed. In 18 Am. & Eng. Enc. of Law, 940, it is said: "A power to sell does not confer a power to mortgage;" and in support of this proposition, quite a number of authorities will be found in note 2 of that page. Indeed, a power to sell *for reinvestment* seems to us to negative the power to mortgage. See *Salinas* v. *Pearsall*, 24 S. C., at page 184.

The second question is thus stated: "2. Did the said executor have the power, under the said will, to sell the land to the defendant, W. W. Morris, an officer of said association, in satisfaction of said mortgages?" If the executor, as we have seen, had no power to make the mortgages, it would seem to follow, necessarily, that he had no power to sell the land in satisfaction of such mortgages. Besides, the will only invested the executor

with power to sell for reinvestment, and this certainly was not a sale for reinvestment. In addition to this, the will expressly limited the exercise of the power to sell to "any time previous to the twenty-first birthday of my youngest child," and this sale was made after the youngest child attained the age of twenty-one years, and, therefore, after the time limited for the exercise of the power of sale. So that, in no view of the case, can this sale be sustained, and there was no error on the part of the Circuit Judge in so holding.

The third question is stated as follows: "3. Was the legacy in favor of said John H. Ruddell, from his wife, Hattie Ruddell, mentioned in the will, a charge upon the land of the testatrix, devised to her children *through the trust deed in favor of said John H. Ruddell?*" Inasmuch as there is no mention of any trust deed, either in the pleadings or the testimony, we are at a loss to comprehend the language which we have italicized in the foregoing quotation. But this is not material, as the case has been argued and considered by the Circuit Judge, as if the question were, simply, whether the pecuniary legacy to John H. Ruddell is a charge upon the real estate devised to the children. Undoubtedly, the general rule is that pecuniary legacies must be paid out of the personal estate, and lands devised are not chargable with their payment. But, while this is the general rule, a testator may unquestionably change it by providing that the legacies shall be paid out of the real estate devised, and made a charge thereon. The burden, however, is upon those who seek to change the general rule, which must be met either by showing that the testator has, in express terms, so directed, or that an intention to that effect can be clearly inferred from the language used in the will. It is, therefore, a question of intention, which is to be gathered from the language used in the will, read in the light of the surrounding circumstances. See *Laurens* v. *Read*, 14 Rich. Eq., 245; *Kirkpatrick* v. *Chestnut*, 5 S. C., 216; *Moore* v. *Davidson*, 22

S. C., 92, and *Jaudon* v. *Ducker*, 27 S. C., 295.  Looking
at this question in the light of these well settled princi-
ples, we first observe, that it is very certain that the testa-
trix has not, in express terms, made this pecuniary legacy
a charge upon the real estate devised, for there are no such
terms in the will under consideration.  So that the ques-
tion is narrowed down to the inquiry whether there is any
language used from which it should be inferred that the
testatrix intended that the legacy should be a charge on the
real estate.  It seems to us quite clear that the will contains
no language from which such an intention can be inferred.
Indeed, the inference from the language used is just
the contrary.  In the clause giving the legacy she directs
when and out of what fund she intended the legacy to be
paid—"four thousand *cash*, balance in annual instalments
*from net proceeds from estate*."  This indicates that the
testatrix had, or thought she had, which, for the purpose
of arriving at what she intended by the words she used, is
the same, enough money on hand to pay much the larger
part of the legacy in *cash*, and the balance was to be dis-
tributed in annual payments, to be made from net proceeds
of the estate, by which she undoubtedly meant the profits
of each year's operations.  It must be remembered that the
will was executed only five days before her death, when her
youngest child was but very little over the age of seven
years, and she very naturally supposed that this legacy
could be very easily paid from the source indicated, as the
will provided that there should be no actual division of the
estate until her youngest child attained the age of twenty-
one years, and, in the meantime, the whole estate would be
in the possession and under the control of her husband, the
legatee, unless he saw fit to deliver a portion of it to each
child as he or she attained the age of twenty-one years.
There was, therefore, no reason why the legacy should
have been made a charge upon the land, and hence she pro-
vided for its payment from other sources—part in cash and
the balance out of the net proceeds of her estate.  There is

not even a hint of any intention on the part of the testatrix that her estate, or any part of it, should be sold for any purpose except for reinvestment. On the contrary, she expressly forbids the sale of certain specified portions of it—"New Castle" and "Ivanhoe"—and only invests the executor with power to sell the balance *for the purpose of reinvestment,* if in his judgment the interests of the children would thereby be promoted, and certainly a sale of any portion of the lands devised (which is necessarily involved in the idea that the legacy should be a charge upon the lands) would be anything else than conducive to the interests of the children. It is manifest, therefore, that the testatrix never intended that the legacy should be a charge upon the lands devised to the children, and certainly never contemplated that any portion of such lands would be sold to pay the legacy.

While it is true that the testatrix, in one of the items of her will, does devise and bequeath to her children "all the balance of my estate, real and personal and mixed"—a circumstance much relied on in *Moore* v. *Davidson* and *Jaudon* v. *Ducker, supra*—yet in the same item she goes on to specify particularly what the property so devised and bequeathed consisted of, viz: her four plantations, known as "Joint Stock," "New Castle," "Sandy Hook," and "Ivanhoe," together with the stock, provisions, horses, mules, farming implements, &c., on said plantations; and then adds these words, "and also balance of stock [which can hardly mean live stock, as that was mentioned only a few lines above], monies on hand and due me at the time of my decease." The use of the word *"balance"* in the quotation indicates that she expected a portion of the "stock, monies on hand and due," would be applied to the payment of debts and that portion of the legacy directed to be paid in cash, and hence only the balance thereof was given to the children. These circumstances are quite sufficient to differentiate this case from the cases of *Moore* v. *Davidson* and *Jaudon* v. *Ducker,* cited above as authority for the principles

upon which an inquiry like the present should be pursued, as in those cases there was nothing to show that the testators there contemplated the payment of the legacies out of any other fund than the realty devised; and, in fact, there was no such other fund sufficient for the payment of the legacies, and hence it was concluded that the testators in those cases must have intended that they should be paid out of the real estate devised, and· that the devisees were only entitled to what remained after the payment of the legacies.

The only remaining question is the fourth, which is thus stated by the Circuit Judge: "4. Was there a parol partition of the land agreed upon between the said J. H. Ruddell and her (his?) children, the said Alice Norma Ruddell and Walter G. Ruddell?" We agree with the Circuit Judge that there was no evidence—certainly no sufficient evidence—showing a parol agreement to partition the land amongst the several parties. Besides, as the Circuit Judge says: "It appears that the plaintiff was an infant at the time of the alleged agreement to partition, and for that reason there could be no partition by consent." And we do not find any evidence that would warrant the conclusion that the plaintiff ever ratified such alleged agreement, if there was one, after she attained the age of twenty-one years. Indeed, even if the version of the appellant, J. H. Ruddell, of this transaction should be adopted, it would seem that his purpose was *not* partition, but simply an attempt to exercise the discretion conferred upon him by the will, "to deliver to each of my said children, the share or proportion of my estate due him or her, as they successively attain to the age of twenty-one years."

Counsel for appellants, in his argument, contends "that the Circuit Judge should have ordered an accounting by the executor, and if the executor had not received his legacy under the will, that, in that event, Morris was entitled to the same." It is sufficient to say that no such question is presented by the exceptions, nor was

passed upon or considered by the Circuit Judge, and hence cannot be considered by us.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.