13367

PATTERSON v. CLEVELAND ET AL.

(163 S. E., 784)·

*Mr. A. P. DuBose*, for appellant,

*Mr. W. G. Sirrine*, for respondents,

March 5, 1932.

The opinion of the Court was delivered by CIRCUIT JUDGE J. HENRY JOHNSON, ACTING ASSOCIATE JUSTICE.

Suit for the construction of so much of the will of Mrs. Harriet D. Wilkins as undertakes to create a trust fund for the maintenance of her home place, "The Villa," in the City of Greenville, and for the confirmation of an agreement entered into by all parties hereto, whereby it was stipulated that a former action, instituted by the respondents herein, should be dismissed and the will of testatrix declared to be her valid legal will; decree of the trial Court confirming the stipulation, but holding that the provision of the will for the trust fund is inoperative for that "there is a failure of personal estate sufficient to create the trust fund, and because there is neither an expression of intention by the testatrix to charge the real estate, nor can there be found in the will any intention to charge the real estate to make up the trust fund"; appeal from the last stated ruling by those devisees for whose use and benefit the home place had been devised in trust unto plaintiff.

The several bequests and devises made by testatrix occur in the following order in her testament:

(1) Item 1 directs the payment of her debts, the expenses of her last illness and funeral, and the cost of a tombstone for her final resting place;

(2) By Clause 2, she gives to a great-granddaughter, and to two great-nieces, her precious jewels and table silver.

(3) By the medium of Paragraphs 3, 4, 5, 6, 7, and 8, she disposes of, to her servants, to a niece, and to a daughter-in-law, five small bequests of money, aggregating the sum of $2,450.00, her clothing, and her remaining jewelry.

(4) By Item 9, she devises her home place, "The Villa," unto plaintiff in trust, (1) for the use and benefit of James Norwood Cleveland for life, (2) then for the benefit of his son, Elliott, for life, (3) then in fee to the issue of the former, but, if none such be in issue upon the death of the latter, then the same is to be disposed of as a part of her residuary estate, of which latter the respondents are the beneficiaries.

(5) Under Clause 10, she bequeathes the sum of $15,000.00 unto plaintiff, and his successors, in trust (a) to invest the same as he may deem proper and expedient, with full power and authority at his absolute discretion to sell all real and personal property which at any time may belong to said estate and any part or parts thereof; (b) to pay all taxes and assessments upon her home place and contents, all insurance premiums, repairs and improvements thereon, and such further sums as he may deem advisable for the care and beautifying thereof, so that the same may present a reasonably good appearance; and to reinvest any surplus income, and to expend the same in his discretion, for any of the aforementioned purposes; (c) after the death of both Norwood and Elliott, to dispose of such trust fund as a portion of her residuary estate.

Finally, by Paragraph 11, all the "residue" of her estate, "real, personal and mixed, of every sort and wherever situate," is given unto plaintiff in trust (a) "to keep the said property invested as at the time of my death, or to invest the same as he may deem proper, with all powers of sale

and reinvestment conferred upon him by Subdivision 'a' of the tenth clause hereof"; (b) for the benefit of respondents.

The next paragraph of the will gives instructions to the trustee as to the handling of those shares of the estate which may vest in any minor or married woman; and then follows immediately, Item 13, by which testatrix specifically directs that, "if it shall prove necessary to sell any of my property to pay debts or estate or inheritance taxes, or for any other purpose, I desire that my executors shall sell my land in Cleveland Township, * * * consisting of a twelve hundred acre tract on Middle Saluda River, * * * and a seven hundred and forty acre tract on the Geer highway," both of which are portions of her residuary estate devised in trust for the benefit of respondents; "the rear end of my residence lot on Augusta Street"; and certain bank stock which she had already disposed of; but, declares she: "I desire that if possible they retain my residence, with the Augusta Street frontage thereof, and as much in the rear of the house as possible; the warehouse on Pendleton Street, * * * and the store on the corner of South Main and River Streets."

Item 14 appoints plaintiff as executor of her will, and as trustee of all the trusts thereby created.

After payment of the estate's indebtedness, the expenses of administration, and the specific bequests mentioned in the will, the personal property of testatrix was insufficient to set up the trust fund for the maintenance and preservation of the home place as directed by Item 10, and the only issue for determination here is whether the same must fail, or whether it is payable out of, or "chargeable" against (as the latter term is often inaptly used in the cases), the mixed residuary estate.

It is true that much was said at the bar, on behalf of respondents, as to the incapacity of testatrix to comprehend and know her personal estate, and that the distinguished Circuit Judge seems to have reached the conclusion that "she did not have comprehension or knowledge of her per-

sonal estate sufficient to meet the requirements as to the creation of the $15,000.00 trust fund"; but, prior to the institution of this action, all interested parties formally admitted, stipulated, and agreed, in writing, that the instrument under construction is the valid legal will of testatrix, to be carried out according to its terms, that a consent decree to that effect should be entered, that no party hereto would bring any action or proceeding of any nature to contest or seek to invalidate the same, or make such defense in any suit which might be instituted in connection with the administration of the estate (Exhibit B of the record herein) ; the trial Court held that such stipulation was proper, confirmed it, and declared that. testatrix "had knowledge and comprehension sufficient under the laws of this State to direct the proper disposition of her real estate." Under such circumstances, as well as upon the record before us, which casts no' reflection whatever upon the mental capacity of Mrs. Wilkins, and but little upon her physical condition, we are of the opinion that the Circuit Judge was mistaken in his conclusion that "she did not have comprehension or knowledge of her personal estate." Cases of this character never arise unless there be a deficiency of personal assets, the primary fund for the satisfaction of pecuniary legacies, and it might be said, therefore, in all such causes, that the testator did not know and comprehend his personal estate— otherwise, he would not have attempted to make the pecuniary legacy in question—but the reports of innumerable Courts throughout the English speaking race are filled with decisions permitting the payment of such legacies out of residuary realty in the event of insufficient personal property.

Although many principles have been promulgated by the judiciary to aid in the proper construction of wills, it needs no citation of authority for the assertion that "all rules of construction are designed to ascertain and give effect to the intention of the testator" that they must be harmonized with this underlying principle, and that they are not to be applied if the testator's intention

is shown to be contrary to them. If, however, in such a cause as this, a cardinal rule of construction be found to be in accord with the manifest intention of the testator, as gathered from his testament, both the rule and the intent of the donor must be given full force and effect.

Concerning the satisfaction of general pecuniary legacies out of real estate, when the personalty is insufficient therefor, there are at least three general rules as follows:

"1. Unless legacies are charged upon the real estate by the will, either in express terms or by clear implication, the personal estate is not only the primary fund, but it is the only fund, for their payment, and if the personalty is insufficient, the legatees have no fund from which payment can be enforced." 40 Cyc., 2011; 28 R. C. L., 305, § 286; *Allen v. Ruddell,* 51 S. C., 366, 29 S. E., 198, 201; *Rinehart v. Rinehart,* 98 W. Va., 93, 126 S. E., 402, 42 A. L. R., 649.

"2. Land specifically devised is not liable for the payment of legacies unless they are charged thereon by the will either expressly or by necessary implication." 40 Cyc., 2028; *Jaudon v. Ducker,* 27 S. C., 295, 3 S. E., 465.

"3. Where a testator, after bequeathing pecuniary legacies, gives the residue and remainder of his real and personal estate (or uses similar terms indicative of a gift of a mixed residue), the legacies are a charge on or are payable out of the residuary real estate, and, in case of a deficiency of personalty, must be paid out of the realty otherwise passing under the residuary clause." Annotation at 42 A. L. R., 656; 40 Cyc., 2024; *Rinehart v. Rinehart, supra; Moore v. Davidson,* 22 S. C., 92 (the remainder of my property, both real and personal); *Jaudon v. Ducker,* 27 S. C., 295, 3 S. E., 465 (the rest and residue of my estate, real and personal); and, in accordance with this rule, it is also held, in a majority of the jurisdictions where the question has arisen, that the mere fact that, before the gift of a mixed residue of real and personal property, the whole being blended in one mass, the testator devises an interest in realty, as well as bequeathes pecuniary legacies, does not

prevent application of the rule that, in such a case, an intention may be inferred to charge the legacies on the residuary realty. *Jaudon v. Ducker, supra,* 27 S. C., 295, 3 S. E., 465, 467; Annotation at 42 A. L. R., 674.

On circuit, the trial Judge undertook to apply the first of these rules, whereas, under the form of the bequests. and devises in the will (and particularly in view of the creation of a mixed residue by testatrix who "blended his real and personal property together as one ma'ss," *Jaudon's case, supra*), it is our opinion that the third rule (denied only in Maryland and New York, so far as our investigation discloses, 40 Cyc., 2026; 42 A. L. R., 690) is the controlling one here, and that our own cases of *Moore v. Davidson,* and *Jaudon v. Ducker,* both *supra,* are determinative of the issue adversely to respondents and contrary to the judgment below.

In the former, testator bequeathed to his three sons, in trust for the use and benefit of his granddaughters, each $10,000.00, when they arrive at the age of 18 years, and bequeathed (my debts being paid) "the remainder of my property, both real and personal, to my sons * * * to be equally divided amongst them." Recognizing the first of the aforementioned rules, that the primary fund for the payment of debts and legacies is the personal estate, this Court held that the legacies to the granddaughters were a charge upon the residuary realty devised to the sons in a blended mass of real and personal property and clearly distinguished the cause from *Laurens v. Read,* 14 Rich. Eq., 245, cited in the decree of Judge Dennis.

In *Jaudon's case,* quoting in part from the syllabus in 3 S. E., 465, testator, by the first clause of his will, bequeathed three pecuniary legacies; by the second clause he gave his wife for life, with remainder over, his residence and household furniture, and eight lots of land with the buildings thereon; third he gave all " 'the rest and residue' of his estate, real and personal" to his executor in trust for his daughters, with full power to sell and convey any or all

parts of the estate for the purpose of partition and division as provided. Shortly before his decease, by a codicil, he gave another pecuniary legacy. On settlement of his estate, after giving the widow the property specifically devised to her, the personalty was insufficient to pay the debts of the estate, or to satisfy the legacies; held that the pecuniary legacies were a charge upon the real estate, except that specifically devised to the widow; that is, that they were payable out of the residuary real estate. It would be a difficult task to find a cause more nearly on all fours with the one here, and a careful study of that decision, which refers, at least indirectly, to all three of the rules adverted to herein, and which is quoted from at length in appellants' brief, convinces us that the trial Court in the instant cause inadvertently fell into the error of undertaking to apply the first of such rules without proper regard to the exception thereto—the manifest intention of the testatrix. See, in this connection, also, *Blakely et al. v. Blakely,* 155 S. C., 123, 152 S. E., 24; *Bank of Florence v. Gregg,* 46 S. C., 169, 24 S. E., 64; *Clarke v. Clarke,* 46 S. C., 230, 24 S. E., 202, 57 Am. St. Rep., 675. *Allen v. Ruddell, supra,* relied upon in the decree below, is distinguishable from these cases, and from the present cause, in that testatrix there directed payment of the legacy out of cash on hand, and the authority to sell realty was limited to purposes of reinvestment. Moreover, the decision in that case specifically recognizes that pecuniary legacies may be authorized by the Courts to be paid out of real estate, "either by showing that the testator has in express terms so directed, or that an intention to that effect can be clearly inferred from the language used in the will," and a diligent scrutiny of the instrument before us convinces that such was the intention of Mrs. Wilkins, so far, at least, as concerns the setting up of a trust fund for the preservation of her home place.

Reading the will in the manner suggested by Mr. Justice McGowan in *Jaudon's case,* 27 S. C., 297, 3 S. E., 465, near bottom of page 466, we find that Mrs. Wilkins specifi-

cally devises her residence to her executor in trust to permit Norwood Cleveland, for the period of his natural life, to reside therein free of rent, or to enjoy the net income therefrom, if he should elect not to live therein; then in trust to permit his son, Elliott, to enjoy the same privileges for the term of his life; and, after the passing of both, in fee to the issue of Norwood; immediately following such devise, and clearly for the purpose of preserving the same to these beneficiaries of her bounty, she bequeathes a trust fund of $15,000.00 unto the executor to be invested and used to pay "all taxes and assessments upon my said home place and contents, all insurance premiums, repairs and improvements thereon, and such sums as he may think advisable for the care and beautifying thereof, so that the same may present a reasonably good appearance"; and not until after the death of both Norwood and Elliott is final disposition of such trust fund unto others to be made. In the same Item (10) by which this fund is established by testatrix, her executor is given "full power and authority," as trustee, "to sell all real and personal property * * * and any part or parts thereof," and the gift of the mixed residuary estate unto respondents is, by subdivision "a" of that Item (11), made subject to that same power of sale. Finally, by Item 13, testatrix declares that, if it should become necessary to sell any of her property for the payment of debts, estate or inheritance taxes, "or for any other purpose," certain portions of the residuary realty should be sold first, but "I desire that if possible they retain my residence, with the Augusta Street frontage thereof." Surely it cannot be denied that Norwood and Elliott were the chief objects of her benevolence, and that her primary intention, as disclosed by her testament, was that her home place on Augusta Street, her "Villa," should be preserved and maintained in all its beauty for their use and benefit. That they might enjoy the occupancy thereof for their lives, respectively, it was necessary that it should be kept in repair, and that all taxes and assessments against it should be paid. Did testatrix intend that

these life tenants should bear those expenses, and the additional cost of insurance, to the end that the ultimate remaindermen in fee should enjoy the corpus, in the event of its destruction by fire, and, if the life beneficiaries should fail, or be unable, to pay the taxes, was it her purpose and intent that her magnificent residence should pass into the hands of some purchaser at a tax sale to the loss of the remaindermen; or was it her intention that her "Villa" should be preserved at all costs, even if the accomplishment thereof should make it necessary to invade her residuary estate and to sell all her property, except "that if possible they retain my residence, with the Augusta Street frontage thereof, and as much in the rear of the house as possible," and that the bequest of the trust fund should, in fact, be coupled with, and treated as a part of, the devise of her home place until the termination of the beneficial life estate therein? The decree below appears to have been influenced somewhat by the comparative value of the gifts to appellants and respondents, respectively, and to have assumed that Norwood Cleveland acquired the absolute estate in the home place, since it is stated therein that "J. Norwood Cleveland has received what the testimony shows as one of the finest residence properties in the city. The grandchild and the four great-grandchildren * * * have received * * * but very little more." As hard as this case may be for respondents, it must be taken for granted that testatrix knew whom she desired to prefer; the disposition of her possessions was subject only to her pleasure, and when it is observed, by reference to Items 9-a and 10-c, that Norwood and Elliott are to enjoy the use and occupancy (or income) of "The Villa" for life only, with remainder in fee to others, and that the trust fund is to be used for the maintenance thereof no longer than the period of such life estates, the intention of Mrs. Wilkins is easily ascertained: So long as her residence is the subject of life interests, all taxes, insurance premiums, repairs, and improvements thereon are to be borne by her estate, but, when the fee vests, the upkeep of such property

is to devolve upon the owners thereof, and the trust fund is to be disposed of as a part of her residuary estate for the benefit of respondents.

It is our opinion, therefore, and we so adjudge, that the trust fund of $15,000.00 (established by Item 10 of the will) is, by the proper rule of construction, by the manifest intention of the donor thereof, as gathered from her testament as a whole, and by the decisions of this Court in *Moore v. Davidson* and *Judon v. Ducker,* payable out of the mixed residuary estate of Mrs. Wilkins.

Exceptions sustained, judgment reversed, and the cause remanded to the Circuit Court of Greenville County for such proceedings as may be necessary to carry into effect the views herein announced.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter concur.

Mr. Justice Bonham dissents.