14878

MACK v. STANLEY ET AL.

(2 S. E. (2d), 792)

Mr. *George Warren,* for appellants,

*Messrs. Lide & Felder* and *Thomas R. Wolfe,* for respondents,

May 11, 1939.

*Per curiam.*

The following facts are agreed to or are undisputed: Joseph R. Mack, a resident of Orangeburg County, died on September 22, 1925. He left of force his last will and testament bearing date June 20, 1923. It was admitted to probate three days after his death, and W. P. Knotts and F. L. Knotts, named as executors therein, duly qualified as such, and have continued to act in that capacity ever since.

The testator never married; his hister, Miss Mary Mack, an elderly woman, was living with him at the time of his death and had lived with him for several years prior thereto. She was in ill health at the date of the will and up to the time of her death, and was in constant need of the services of a nurse and of treatment by a physician. We quote here Item 2 of the will, the construction of which is involved: "It is my will and I so direct, that my beloved sister, Mary Mack, reside at my home place, if she so desires, and that she have a proper living and support out of my estate during her lifetime; this provision to be made to and for her, the said Mary Mack, by my Executors. I also give unto my said sister, Mary Mack, all of my household goods and furniture as her own; this not to include farming equipment or other personalty."

After the death of her brother, Miss Mack continued to live at the "home place" until September 16, 1928, and up to that time was provided with a proper living and support by the executors. About that date, desiring to change her place of residence, she moved, and was moved, from North, South Carolina, to the home of Mrs. Mary R. Stanley, her niece, at Hampton, South Carolina. There the services of a nurse in constant attendance, and of a physician were provided for her by Mrs. Stanley, the executors failing to make such provision, although requested to pay the accruals for doctor's bills, nurse companion, and medical supplies and sustenance.

In view of this situation, on May 20, 1929, Miss Mack presented to the Probate Court for Orangeburg County a

petition setting forth these facts, and two days thereafter the Judge of Probate issued an order directing the executors to show cause why they should not be required to pay the petitioner $715.60, the amount accrued to that date, and to make her monthly payments of $81.00 representing the accrual of physician's charges, medical purchases, etc. On June 13, 1929, the executors made return to the rule. Among other things, they submitted themselves in the management of the estate under the terms of the will to the protection of the Probate Court, and represented that they had no funds on hand and that the only assets of the estate at that time consisted of real estate.

After the filing of the petition, but before the issuance of an order, Miss Mack had to undergo an operation at a hospital in Columbia, thus incurring numerous medical bills, none of which were paid by the executors. All of this appearing to the satisfaction of the Probate Court, it directed that the executors pay to the petitioner the sum of $715.60, together with $81.00 per month from that date forward, together with physician's charges and medical purchases to be evidenced by bills for the same. Its order further provided: "The executors have made certain representations that they have no funds on hand with which to make the said payments. It is ordered that the said executors be, and they are hereby authorized, directed and empowered and instructed to borrow such money as may be necessary on faith of the security of the lands owned by the estate of said Joseph R. Mack, with which to make the said payment, and to pledge as security therefor the said lands."

On October 3, 1931, the executors, under the authority thus vested in them, made and delivered a note and mortgage to·Mrs. Mary R. Stanley in the sum of $2,830.04, the mortgage covering all of the real estate of which Joseph R. Mack died seized and possessed; it was later transferred to Loan & Exchange Bank to secure an indebtedness of $125-.00. The note was not paid at maturity, and on November

7, 1932, suit for foreclosure of the mortgage was instituted by the bank in the Court of Common Pleas for Orangeburg County against the executors, Mrs. Stanley and Dr. J. B. Harvey. In this action, the real estate described in the complaint and mortgage was ordered to be sold at public auction by Honorable B. H. Moss, County Judge as special Referee, on the first Monday in January, 1934. The lands were offered for sale as directed, Mrs. Olive Mack making the highest bid therefor in the sum of $4,900.00.

Thereafter, and before compliance with the bid, the present action, a separate and distinct suit from the foreclosure proceeding, was commenced by the plaintiff against the defendants, in which it was sought to have the will of Joseph R. Mack construed, and to have set aside and nullified the foreclosure suit and the mortgage cancelled of record. It was alleged, among other things, "that the said mortgage and the judgment founded thereon are void and of non-effect, because the order or orders of the Probate Court of Orangeburg County, said State, respecting same were wholly beyond the jurisdiction of that Court, and because the defendant-executors had no power or authority whatsoever to execute and deliver such mortgage." It was also alleged, that the defendants "have or claim to have some interest in the subject matter of this action by way of lien, title or interest therein or otherwise, and are joined herein in order to have a complete and final adjudication of the rights of all concerned." Judgment was demanded in accordance therewith.

The defendant, Mrs. Mary R. Stanley, answering the complaint at length, alleged, *inter alia,* "that under the terms and provisions of the said will of Joseph R. Mack, the executors were vested with full power and authority to make, execute and deliver said mortgage;" and "that the Court of Probate had power and jurisdiction to order the execution and delivery of said mortgage." She also pleaded, by way of counterclaim, that the estate was indebted to her in the sum

of $3,315.69, as of May 1, 1933, together with interest thereon, etc. She prayed that the Court decree that the judgment in the foreclosure action mentioned in the complaint to be of full force and effect; but, failing in that prayer, that the Court "inquire into all of the matters and things alleged in the complaint  *  *  *  and render judgment for this defendant for the amount" set forth in her answer as due and owing her, "subjecting all of the real estate in the said estate to the payment thereof." The answer of the bank was the same as that of Mrs. Stanley. The defendants-executors defaulted, and the remaining defendants joined in plaintiff's prayer to all practical purposes.

The case was referred to Honorable B. H. Moss, County Judge as specail Referee, who filed his report, a very full one, on December 30, 1937. Based upon his findings and conclusions he recommended that the prayer of the complaint be granted; that the answers of the defendants, Loan & Exchange Bank and Mrs. Mary R. Stanley, including the counterclaim set up by the latter, be dismissed; that the judgment of foreclosure, and the sale founded thereon, be held invalid and the mortgage ordered cancelled of record; that the pecuniary legacy of support of Miss Mary Mack, the sister of the testator, be held not to be a charge upon the real estate d e v i s e d in Items 3 and 4 of the will to the nephews of the testator; but that the plaintiff, J. J. Mack, Jr., and the defendant, Joe Ross Mack, the said nephews, be held to own the real estate devised to them, respectively, in fee conditional. He also recommended that the executors be required to account for their acts and doings as such; that the case be kept open for the determination of the respective rights of certain minor defendants; and that something be done with reference to the payment of taxes accumulated upon the real estate.

The report of the special Referee, upon exceptions thereto by the defendants, Mary R. Stanley and Loan & Exchange Bank, was confirmed by Judge Dennis, and the case is here on appeal from his decree.

The exceptions raise several questions, the first of which is whether the Circuit Judge erred in holding that the bequest or pecuniary legacy given Mary Mack in Item 2 of the will was not a charge upon the real estate of the testator.

All of the real property owned by Mr. Mack at his death was devised by him to his nephews, Joe Ross Mack and J. J. Mack, Jr., the former taking under Item 3 and the latter under Item 4 of the will; and it was held by the Court below that each of them took a fee-conditional estate. As is seen from Item 2 of the will, which we have quoted above, the testator willed and directed that his sister, Mary Mack, "have a proper living and support out of my estate during her lifetime; this provision to be made to and for her, the said Mary Mack, by my Executors." The question, as above indicated, is whether the pecuniary legacy to the sister is a charge upon the real estate devised to the nephews.

The controlling principles are thus stated in *Allen v. Ruddell*, 51 S. C., 366, 29 S. E., 198, 201: "Undoubtedly, the general rule is that pecuniary legacies must be paid out of the personal estate, and lands devised are not chargeable with their payment. But, while this is the general rule, a testator may unquestionably change it by providing that the legacies shall be paid out of the real estate devised, and made a charge thereon. The burden, however, is upon those who seek to change the general rule, which must be met, either by showing that the testator has in express terms so directed, or that an intention to that effect can be clearly inferred from the language used in the will. It is therefore a question of intention, which is to be gathered from the language used in the will, read in the light of the surrounding circumstances. See *Laurens v. Read*, 14 Rich. Eq., 245; *Kirkpatrick v. Chesnut*, 5 S. C., 216; *Moore v. Davidson*, 22 S. C., 92; and *Jaudon v. Ducker*, 27 S. C., 295, 3 S. E., 465." See also the recent case of *Patterson v. Cleveland et al.*, 165 S. C., 266, 163 S. E., 784.

The testator did not make, in express terms, this pecuniary legacy a charge upon the real estate. There is no argument about that. We think, however, that his intention to do so can be clearly inferred from the language used, when read in the light of the surrounding circumstances. In fact, we are of opinion that his environment, at the time he made the will, requires such a construction of it. He had no wife or children, looking to him for care or support. His sister was living with him. She was growing old and was in ill health, and was in constant need of attention and care. Her care and support, should she survive him, must have necessarily been one of much concern to him; and while he may have been fond of his nephews, this elderly sister no doubt held first place in his affections. We find, therefore, after charging his estate with the payment of all of his debts, etc., he next charges it with "a proper living and support" for this sister, and directs that such provision be made to and for her by his executors. Hence, it seems to the Court, and we so hold, that it was the clear intention of the testator that this legacy should be made a charge upon his entire estate, both personal and real; and as the personalty was not sufficient with which to pay it, a finding of fact by the Probate Court on November 19, 1929, the real estate devised to the nephews is charged with the payment thereof. The Court below was in error in holding otherwise, and the exceptions raising this question are sustained. See, generally, *Moore v. Davidson,* 22 S. C., 92; *Bank of Florence v. Gregg,* 46 S. C., 169, 24 S. E., 64; *Dixon v. Roessler,* 76 S. C., 415, 57 S. E., 203; *Shired v. Nesbit,* 90 S. C., 20, 72 S. E., 545; *Patterson v. Cleveland, supra.*

The second question presented for decision is whether the trial Judge erred, as contended by the appellants, in holding that the Probate Court was without jurisdiction to authorize and direct the executors of the will to execute the mortgage in question; and in ordering that such mortgage,

as well as the judgment of foreclosure and sale founded thereon, to be cancelled of record.

This assignment of error is without merit. In fact, counsel does not greatly emphasize it in argument.

The Probate Court has jurisdiction, which is purely statutory, in matters testamentary and of administration. *Caldwell v. Little*, 15 S. C., 236; *Bradford v. Richardson*, 111 S. C., 205, 97 S. E., 58; *Beatty v. National Surety Company*, 132 S. C., 45, 128 S. E., 40. But "a distinct ground of equitable relief is not included in the general grant of" such jurisdiction. *Beckwith v. McAlister*, 165 S. C., 1, 162 S. E., 623, 628. The equitable relief sought, in the light of the disclosed facts, was a matter for determination in the Court of Common Pleas, in equity, in an action to which the minor devisees were proper and necessary parties.

But the trial Judge erred in not granting the motion of the defendants for an order "to establish the indebtedness contended for by the appellants and requiring the executors to fully account for all property coming into their hands, and for * * * other and further action and payment in the premises as may be right and proper." No good reason appears, however, as all parties in interest are before the Court in this action, why this should not now be done. The case, therefore, will be remanded to the Court below for that purpose, among other things. When the amounts of the claims of the appellants, Loan & Exchange Bank and Mrs. Mary R. Stanley, are determined and fixed, the payment thereof will be a charge upon all of the real estate of which the testator was seized and possessed at his death; and if the personal estate is not sufficient, to pay such claims, then the real estate will be subjected to the payment of same. The rights of all other parties in interest will be considered and protected.

The decree of the Circuit Court is reversed and the case remanded to that Court for further proceedings consistent with this opinion.

Mr. Chief Justice Stabler and Messrs. Justices Bonham, Baker and Fishburne concur.

Mr. Justice Carter did not participate on account of illness.