## DODGE *vs.* MANNING.

Where B., by his will, devised his real and personal estate to his wife for life, with remainder to his grandson J. B. when he should arrive at the age of 21; and the testator in his will gave to his daughter C. $250, to be paid by J. B., out of his estate, one year after he should arrive at the age of 21; and J. B., after he was of age, upon the death of the testator's widow in 1832, came into possession of the real and personal estate devised and bequeathed to him; and J. B. and P. B. mortgaged the real estate devised to J. B. to G., to secure the payment of $6000;

Dodge v. Manning.

and that mortgage was foreclosed in chancery and the mortgaged premises sold under the decree, in July, 1834; at which sale M. N. and O. purchased three several parcels of the premises, and J. B. another parcel; and at the sale J. B. and the legatees, named in the will, gave notice to the bidders that the legacies were unpaid and were liens upon the premises; which claim was resisted by the counsel of the mortgagee, but it was not made a part of the terms of the sale that the purchasers should pay the legacies; and C. subsequently filed her bill against the purchasers of the real estate for the recovery of her legacy; *Held*, that the purchasers at the master's sale took the property subject only to such equitable claims as would have existed against it, if the mortgagee himself had become the purchaser, without any other notice of the claims of the legatees than he had at the time of the execution of the mortgage.

*Held also*, that the legacy bequeathed to C. was an equitable lien upon all the real estate devised to J. B.; but that the personal estate bequeathed to J. B. was the primary fund for its payment; and that C. could not resort to the real estate, in the hands of the purchasers at the master's sale, for the payment of her legacy, unless the personal estate had been exhausted in the payment of the debts of the testator, or those who were accountable for it were irresponsible.

*Held further*, that the giving of the mortgage to G., by J. B., was an acceptance of the devise; and that J. B., by his acceptance of the devise, became personally liable for the payment of the legacy of C.

*Held also*, that C. could have commenced a suit to charge the real estate devised to J. B. with the payment of her legacy, at the end of one year after J. B. became 21, without waiting for the termination of the life estate of the widow; and that the interest of J. B. in the estate, might have been sold under a decree, for the payment of the legacy, subject to the life estate of the widow.

It seems, also, that as a part of the real estate devised to J. B. was revested in him, by his purchase at the master's sale, in the same manner as if it had never been included in the mortgage, such part, as between him and C., was primarily liable for the payment of the legacy of C., in exoneration of those portions which were sold to other persons under the decree of foreclosure.

The admission of a husband, made during the coverture, that he had received payment of a legacy bequeathed to his wife, is evidence of such payment, in a suit for the recovery of the legacy, commenced by her after his death; the husband, during his life, having the right to receive payment thereof.

THIS was an appeal by Manning, Boyd and Becker, three of the defendants, from a decree of the vice chancellor of the fourth circuit. J. I. Becker, the grandfather of the complainant, died in January, 1805. By his will, he devised a part of his real estate to his daughter Caty Borst. And all the residue of his estate, real and personal, he devised and bequeathed to his wife for life; with remainder to his grandson, J. B. Borst, when he should have arrived at the age of twenty-one. The testator also

Dodge *v.* Manning.

gave and bequeathed to the complainant $250, to be paid by his grandson J. B. Borst, *out of his estate,* one year after he should arrive at the age of twenty-one. He also gave to three others of his grandchildren, legacies of $250 each, to be paid by J. B. Borst in two, three and four years after he should arrive at that age. J. B. Borst became of age in September, 1820; and came into possession of the estate devised and bequeathed to him, by the death of the testator's widow, in February, 1832.

In September, 1826, J. B. Borst and wife and Peter Borst, mortgaged the real estate which the testator devised to J. B. Borst, consisting of four parcels of land in the county of Schoharie, to George Maxwell, to secure the payment of $6000. That mortgage was foreclosed in chancery, and the mortgaged premises were sold under the decree, in July, 1834. At such sale the defendants Manning, Boyd, and Becker, each became a purchaser of one of the parcels of the land thus mortgaged; and J. B. Borst, who by the will of the testator was charged with the payment of the legacies, and who was one of the mortgagors, became the purchaser of the other parcel. At the sale, J. B. Borst and Peter Borst gave notice to the bidders that the legacies were unpaid, and insisted that they were a lien upon the mortgaged premises; which claim was resisted by the counsel for the mortgagee. But the bidders were left to understand that they would take the premises subject to any legal or equitable incumbrance which could properly be charged thereon, by the legatees, as against the mortgagee. It was no part of the terms or conditions of the sale, however, that the purchasers should pay the legacies or any part thereof; but the purchasers were to take such interests in the premises as the master was authorized to convey, under the decree.

In 1835 the complainant filed her bill in this cause, setting forth the above facts, and claiming that her legacy was still due and unpaid; and insisting that it was an equitable lien upon the several parcels of the mortgaged premises, in the hands of the purchasers under the decree of foreclosure. The three defendants, who were the appellants in this case, put in their answer upon oath, denying that they purchased the premises subject to the payment of the complainant's legacy. They also insisted, in

Dodge v. Manning.

their answer, that J. B. Borst having accepted the devise and bequest to him in the will of the testator, he became personally liable for the payment of the legacies ; and that the complainant's legacy, if not paid, was an equitable lien upon the part of the devised estate which he bid in at the master's sale; which part of the devised premises should be first resorted to for payment. But they insisted that the several parcels of the premises which were purchased by them, were not subject to the lien of the legacy, even if it had not been paid. These three defendants also set up, as a defence, that the legacy had been paid to the husband of the complainant, in his lifetime. They also stated that the testator left about $1300 in personal estate, at the time of his death, as appeared by the inventory filed by the executors; which inventory was subsequently produced in evidence, and established that fact. J. B. Borst was allowed, by the complainant, to put in his answer without oath, although an answer on oath was not waived by the bill.

The cause was heard upon pleadings and proofs, before the vice chancellor. He decided and decreed that the legacy of the complainant was a lien upon the several parcels of land, in the hands of the defendants, as purchased by them respectively under the decree of foreclosure; and that the legacy, with interest thereon from the time it became payable, in September, 1821, together with the complainant's costs in this suit, should be apportioned among the defendants, in proportion to the amount of their several bids at the sale under the decree. He therefore directed a reference, to a master, to compute and apportion the amount of the legacy, with interest and costs, accordingly; and decreed a sale of their several parcels for the payment of the amount, which should be reported as chargeable to each, upon the coming in and confirmation of the master's report.

*H. Hamilton & M. T. Reynolds,* for the appellants. The legacies mentioned in the will of John I. Becker are not a charge on his real estate, in the hands of a purchaser for a valuable consideration. Should the court be of opinion, that the legacies are a charge on the real estate, in the hands of a purchaser for

a valuable consideration, still the personal property must first be exhausted, before the real estate can be made liable. The personal estate is primarily liable. (*Lupton* v. *Lupton*, 2 *John. Cas.* 628.) The personal property of John I. Becker, the testator, amounted to $1326,50, sufficient for the payment of all the legacies, and must be first applied, before the real estate can, in any event, be made liable; it not appearing that the testator owed any debts at the time of his death. The defendant John B. Borst, having accepted the devise and bequest made to him by the testator, in and by the said will, became personally liable for the payment of the said legacies. And having mortgaged said premises absolutely, and not as being subject to the said legacies, the other defendants, Manning, Boyd and Becker, cannot be made liable for the payment of the legacies, or any part thereof, so long as John B. Borst is able to pay them. The decree of the vice chancellor, at least, ought to have directed so much of the premises as was purchased by John B. Borst, at the master's sale under the Maxwell mortgage, to be first sold, and the proceeds applied to the payment of the legacies in question, before the parcels purchased by the other defendants were made liable. The defendants, Manning, Boyd and Becker, by their purchase at the sale under the Maxwell mortgage, acquired the same rights that Maxwell would have acquired, had he been the purchaser. And there being no proof of notice to Maxwell, of the non-payment of the legacies, at the time of the execution of the mortgage, his rights could not be prejudiced by any subsequent notice. After a lapse of more than thirty years, the evidence will justify the conclusion that the legacy to the complainant has been paid to her, or to her husband Daniel D. Dodge, in his lifetime. And the bill is filed in this case, not at the instance of or for the benefit of the complainant, but at the instance and for the benefit of her brother, the defendant John B. Borst, and with a view to defraud his co-defendants, Manning, Boyd and Becker. (*Arden* v. *Arden*, 1 *John. Ch.* 316.)

*A. C. Paige*, for the complainant. The complainant's legacy is an equitable charge on the lands devised to John B. Borst; and

the charge binds and is a lien upon the lands, in the hands of the defendants. (*Harris* v. *Fly*, 7 *Paige*, 421. *Alcock* v. *Sparhawk*, 2 *Vern. Ch. Rep.* 228. *Clowdsly* v. *Pletham*, 1 *Id.* 386, *yr.* 1686. *Aubrey* v. *Middleton*, 2 *Eq. Cas. Ab.* 497, *case* 16. *Elliot* v. *Hancock*, 2 *Vern. Ch.* 143, *yr.* 1690. *Syphet* v. *Carter*, 1 *Ves. sen.* 499. *Hassell* v. *Hassell*, 2 *Dick. Ch. Rep.* 527, *yr.* 1776. 2 *Story's Eq.* 493, 494, §§ 1246, 1247, *and note* 2, *p.* 494. *Glen* v. *Fisher*, 6 *John. Ch.* 38. · *Birdsall* v. *Hewlett*, 1 *Paige*, 32.) Legacies are an equitable charge on the land, although the devisee, by accepting the devise, becomes personally liable. (1 *Paige*, 408. 1 *Roper on Leg.* 452. *Henville* v. *Whitaker*, 3 *Russ.* 343. *Dover* v. *Gregory*, 10 *Sim.* 393. *Graves* v. *Graves*, 8 *Id.* 54. *Kelsey* v. *Deyo*, 3 *Cowen*, 141.) The estate for life, of the widow, in the real and personal estate, was exempt from the charge of the legacies. The personal property, as well as the real estate for life, was exonerated; this was the intent of the testator. Real estate may be generally charged with debts and legacies, with the exception of a particular interest, limited in the whole or part of the estate, where the intention of the testator is clearly in favor of such exemption. (1 *Roper on Leg.* 453. *Birmingham* v. *Kerwan*, 2 *Scho. & Lef.* 444, 448, *per Ld. Redesdale.*) Where the real estate is combined with the personal, and both are made to constitute one fund, the former will be liable to all the burdens of the latter. (*Bench* v. *Biles*, 4 *Mad. Ch.* 187. 1 *Roper on Leg.* 450. *Kidney* v. *Coussmaker*, 1 *Ves. jun.* 436. · 2 *Id.* 257. *Carey* v. *Carey*, 2 *Scho. & Lef.* 188. 1 *Roper on Leg.* 452. *Webb* v. *Webb*, *Barnard. Rep.* 86. *Harris* v. *Fly*, 7 *Paige*, 421.)

The legacies must be paid out of the real estate, in exoneration of the personal property; as the former was purchased subject to the payment of the legacies, notice having been given at sale; and at a diminished price paid, in consequence thereof.

And as John B. Borst united in the notice at the sale, the real estate is now the primary fund for the payment of the legacies; and the personal estate is exonerated and discharged. (1 *Roper on Leg.* 463, 466, 470. *Samuel* v. *Wake*, 1 *Bro. C. C.* 144. *Hartley* v. *Hurle*, 5 *Ves.* 540. *Meriv.* 236. *Greene* v. *Greene*,

Dodge v. Manning.

4 *Mad. Ch.* 148. *Burton* v. *Knowlton*, 3 *Ves.* 107, 109. 1 *Roper on Leg.* 474, 484. 1 *Bro. C. C.* 462. 4 *Ves.* 823. 9 *Id.* 454. 1 *Meriv.* 219, 220. 7 *Paige*, 421. 2 *John. Ch.* 614. 3 *Mad.* 56. *Eber* v. *Fisher*, 6 *John. Ch.* 33.) As between the complainant and these defendants, the ordinary questions as to which is the primary fund, and which the secondary fund for the payment of these legacies, or which fund is to be first applied in payment, and which, if either, is auxiliary to the other, do not arise. If there had been any personal fund which came to the hands of the devisee, applicable to the payment of these legacies, as between certain parties, viz. a bona fide purchaser of the real estate without notice, and John B. Borst, or his personal representatives, or perhaps the legatee, or as between the heirs at law and personal representatives of John B. Borst, these questions might have arisen; and in such cases, no doubt, the personal estate must have been first applied. But here, if the personal estate formed any part of the charged, blended fund, real and personal, the blended fund belonged to John B. Borst; and he chose (he had a right to do so,) to cast the whole burden, on the real estate (one part of the fund.) At the sale, Borst was present when the notice was given; and at one time gave the notice himself that the legacies were a charge on the real estate. And he assented to the notice of Peter I. Borst, that they were to be paid out of the real estate. The defendants purchased with this notice. They, therefore, purchased subject to the payment of these legacies; as clearly as if they had taken a conveyance expressing on its face that it was subject to them. The owner of real and personal estates may stamp on them what nature he pleases. As where a man purchases land subject to a mortgage, he may, or he may not, as he pleases, adopt the mortgage debt as his own; so as to subject his personal assets to the burden of discharging it, in exoneration of his real estate. (1 *Roper on Leg.* 495, 489.)

There was no personal estate in the hands of John B. Borst, applicable to the payment of the legacies. The answer avers none. It avers merely that John I. Becker was, at the time of his death, possessed of personal property, consisting of horses,

Dodge v. Manning.

cattle, sheep, swine, implements of husbandry, household furniture, negro slaves, and wearing apparel. The answer does not aver that any of this property remained at the death of the widow. She had a life estate in it; which estate was exempt from the charge. The inventory of the testator's personal property is proved. From that, it will be seen, that there could have been no personal estate, of any value, at the death of the widow. The slaves became free in 1824 or 1825. The horses, cattle, sheep and swine, were worn out and dead. The increase did not go to the remainderman. The implements of husbandry, after a use of 27 years, must have been worn out and valueless; so, also, of the household furniture and wearing apparel; and out of this property, the funeral expenses and debts were to be paid. The proofs, therefore, show a deficiency of personal estate to pay the legacies. The allegation in the answer is insufficient as to personal estate. It should have averred, and the defendants should have proved, that personal property came to the possession of John B. Borst. It was not necessary to aver in the bill the insufficiency of personal property. If such averment was necessary, the defendants should have demurred. Again, the answer does not aver that the testator died possessed of personal estate sufficient for the payment of his debts, or that any remained, after the payment of the debts, to be applied to the payment of these legacies.

It was not necessary to give Maxwell notice of the charge. He was only a mortgagee. His mortgage was merely a specific lien—a security for a debt. The property mortgaged was subject to the legacies. It was an adequate security for Maxwell's debt. But he had constructive notice that the legacies were a charge, being compelled to make title through the will of John I. Becker; and the defendants had both actual and constructive notice of such charge. A purchaser deriving title through a will, and thereby having constructive notice of its contents, takes the estate devised, subject to the equitable claims of legatees, where legacies, by the will, are charged on such estate. (*Harris* v. *Fly*, 7 *Paige*, 427.) The defendants, however, have not set up, in their answer, that Maxwell was a bona fide mortgagee,

without notice of the equitable claims of the legatees. This was necessary to protect themselves as bona fide purchasers. (*Harris* v. *Fly*, 7 *Paige*, 421.)

Although the defendant John B. Borst, by accepting the devise, is personally liable to complainant, the lands are nevertheless charged, and the complainant can, and under the circumstances, is obliged to resort to them first for payment. The equities as between J. B. Borst and the defendants, require that the lands should be first resorted to.

· The defendants having had notice of the legacy, are liable to the payment of such legacy; with interest and costs. Refusing to pay, when called on, subjects them to costs. And such costs are a charge on the real estate. (1 *Paige*, 32, 407.) Interest is payable on a legacy from the time it is due; and where the legacy is a charge on real estate, the interest is a charge also. The answer admits that the legacy (if not paid,) with interest thereon from the end of one year after J. B. Borst came of age, is due to the complainant. Interest on a legacy is payable although not demanded. Costs also are recoverable, although there has been no demand. (*Glen* v. *Fisher*, 6 *John. Ch.* 38. *Freeman* v. *Simpson*, 6 *Sim.* 75.)

There is no evidence of the payment of the complainant's legacy. H. Manning is the only witness on the subject of payment. He swears only to the declarations of the complainant's husband. These, if admissible in evidence, do not make out payment. The whole evidence consists of declarations of Dodge, "that he had settled off with John B. Borst." The legacy of the complainant was not mentioned during the conversation. That Dodge referred to the legacy, was, therefore, only the inference of the witness. This conversation was two or three years before Dodge's death, and previous to the death of the testator's widow. And it was before the time the parties had reason to suppose, and probably did suppose, that the legacy was to be paid, which was at the death of the widow; as John B. Borst was to pay it out of the estate. He could not well pay it out of the estate before he came into the possession of such estate. There is, therefore, no reason to suppose that

Dodge, in the settlement to which he alluded, referred to the legacy of the complainant. · This legacy Dodge could not have received, if the complainant objected, without making a provision for her. (5 *John. Ch.* 196. 7 *Paige*, 633. 4 *Id.* 64. 2 *Kent's Com.* 139. 2 *Story's Eq. Juris.* § 1414. 6 *Paige*, 366. ‹ 6 *John. Ch.* 25. 5 *Id.* 464.) It is improbable that John B. Borst would pay this legacy, before he received the property out of which it was to be paid. And it is improbable that Dodge should have claimed it before that time. Dodge had no right to collect it without his wife's consent. He could not have maintained an action at law for it; the legacy being a charge on both real and personal property. (6 *Cowen*, 333.) The admission by John B. Borst, in his answer, that this legacy is still due, confirms the position that the legacy has never been paid. But the declarations of Dodge are inadmissible, as evidence against the complainant. They were objected to. Husband and wife cannot be witnesses for or against each other. (1 *Phil. Ev.* 77. 2 *Cowen & Hill's Notes*, 1554.) A wife, after a husband's death, cannot disclose his conversations. (2 *Cowen & Hill's Notes*, 1555. 7 *Verm. R.* 537. *Peake's Cas.* 219, 221.) A widow cannot be asked to disclose conversations, between herself and her late husband. (*Boker* v. *Hasler*, 1 *Ryan & Moody*, 198, *per Best, C. J.*) A woman, after a divorce, cannot testify to conversations with her husband during the existence of the marriage. (*Munsal* v. *Twisleton*, *Peake's Ev. App.* 44, *per Ld. Alvanley.*) So where the wife is a sole party, claiming in her own right, and under right paramount to her husband, his admission is not evidence against her, although made during coverture. (*Smith* v. *Scudder*, 11 *Ser. & Rawle*, 326.) Evidence of declarations of a party is to be scrutinized and received with caution. (*Law* v. *Merrills*, 6 *Wend.* 268, *per Chan.*) The demand for this legacy, when the bill was filed, was not a stale demand. The bill was filed within three years after the death of the testator's widow. The answer sets up neither the staleness of the demand, nor the statute of limitations. There is no presumption of payment, from lapse of time. (2 *R. S.* 301.) Neither lapse of time nor the statute of limitations would

bar the complainant's right to recover her legacy; she having been a feme covert until November, 1831 or 1832. (1 *Paige*, 616.) There was no statute of limitations to a charge on real estate previous to 1830. (7 *John. Ch.* 115. 2 *R. S.* 302.)

The quantity and value of the several portions of the land charged with the legacy, owned by the defendants, and the amount of the personal estate, if any, applicable to the payment of the legacy, may be ascertained on a reference; and a proper decree may be made on the coming in of such report.

Even if the personal estate, if any, is the primary fund for the payment of the complainant's legacy, the defendants, Manning, Boyd, and Becker, as owners of portions of the real estate charged with the legacy, are proper and necessary parties; to the end that the real estate owned by them may be resorted to for the payment of any deficiency which may remain, after applying, in payment of the legacies, all the personal estate; which deficiency can be ascertained on a reference. When a bill is filed to recover a legacy charged on both personal and real estate, all the owners of both the personal and real estate should be made parties; in order that the different classes and portions of such estate, may be resorted to, for payment of the legacy, in the order in which the same are by law charged. The bill should not, therefore, have been dismissed with costs, under any circumstance.

*J. Rhoades*, for the defendant J. B. Borst. The legacy bequeathed to the complainant, in the will of J. I. Becker, is an equitable charge on the real estate devised to J. B. Borst, and purchased by the defendants, at the sale under the decree in the suit brought to foreclose the mortgage given to George Maxwell. The legacies, given in the will of J. I. Becker, must be satisfied out of the lands purchased by the defendants, at the sale under the said decree of foreclosure, irrespective and in exoneration of, any personal estate the testator may have left at his death, applicable thereto; inasmuch as such lands were purchased subject to the payment of such legacies. Notice having been given at the sale, that such lands were subject to the said legacies, and that

whoever purchased the lands would be required to pay the lega-
cies, and as the law presumes (and such no doubt was the fact) that
the defendants, after receiving such notice, purchased the lands in
reference to the charge of the legacies thereon, and with the expec-
tation of paying them off; and that they bid a less sum for such
lands in consequence of the legacies being such charges. If the
defendants are to be regarded, under the said notice, (in giving
which the devisee J. B. Borst united) as purchasing the said
lands subject to the payment of the legacies, and under an im-
plied agreement to pay them off, and as having obtained such lands
at a diminished price in consequence of the legacies being charged
thereon, then these lands are now the primary fund for the
payment of the legacies; and no resort should be had to either
the personal estate, (if any) or to the said J. B. Borst, unless such
lands prove insufficient to pay the legacies.

There was no personal estate of the testator, which came to the
hands of J. B. Borst, out of which the legacies could have been
paid. The answer of the appellants does not aver any, and the
proof shows none. There was therefore a deficiency of personal
assets, and the lands became and now are the only fund out of
which the legacies can and ought to be paid. It was not necessary
that Maxwell the mortgagee should have had notice that the lega-
cies were a charge on the lands, in order to subject the lands to
such charge. A mortgage is only a specific lien—a security for
a debt—a chattel interest. But if notice was necessary, the
mortgagee, by being compelled to make title through the will of
J. I. Becker, had constructive notice of the charges on the lands;
and took the mortgage subject to them. And the defendants
Manning, Boyd, and Becker, who purchased at the mortgage sale
also, not only had actual notice of the charges, but the like con-
structive notice of them. These defendants having had actual
as well as constructive notice that the legacies were charges on
the lands, before they purchased, they cannot be protected from
the payment of such legacies. (*Alcock* v. *Sparhawk,* 2 *Vern.*
228. *Clowdsley* v. *Plethons,* 1 *Id.* 386. *Aubrey* v. *Middleton,*
2 *Eq. Cas. Abr.* 497. *Elliot* v. *Hancock,* 2 *Vern.* 143. 2 *Sto-
ry's Eq.* 493, 4, §§1246, 7; 499, *n.* 2. *Lypet* v. *Carter,* 1 *Ves.*

sen. 499.   Hassel v. Hassel, 2 Dick. 527.   Harris v. Fly, 7 Paige, 421.   Doker v. Hasler, 1 Ry. & Moody, 198.   1 Car. & Payne, 364.   Smith v. Scudder, 11 Serg. & Rawle, 325. Webb v. Webb, Barnard. Rep. 86.   Haslewood v. Pope, 3 P. Wms. 322.   Dolman v. Smith, Prec. in Ch. 456.   Samuel v. Wake, 1 Bro. C. C. 144.   Hartley v. Hursle, 5 Ves. 540.   1 Meriv. 236.   Greene v. Greene, 4 Mad. 148.   11 Ves. 186.   1 Ves. sen. 99.   2 R. S. 297, § 24, sub. 4.   Id. 301, 2, §§ 52, 53. Id. 301, § 48.)

THE CHANCELLOR.   There is nothing in the testimony, in relation to what took place at the master's sale, to make the complainant's legacy a charge upon the several parcels of the premises in the hands of the purchasers; except as a mere notice to them, that such a claim was made.   And if the mortgagor has suffered the mortgaged premises to be sacrificed, by deterring purchasers from bidding, it is the result of his own folly, and not the fault of the appellants; who will in any event suffer enough in having purchased a lawsuit.   All the evidence, therefore, in reference to the value of the several parcels of the premises sold, was irrelevant and improper, and should have been suppressed.   The appellants took the property, subject only to such equitable claims as would have existed against it, if the mortgagee himself had become the purchaser; without any other notice of the claims of the legatees than he had at the time of the execution of the mortgage.   The defendants, however, have not in their answer, set up as a defence, that Maxwell was a bona fide mortgagee, without notice of the equitable claims of the legatees; if the legatees had any such claims.

The case of Harris v. Fly, (7 Paige's Rep. 421,) and the decisions there referred to, settle the principle, that the legacy in this case was an equitable lien upon the real estate devised to J. B. Borst.   But the real estate was not the primary fund for the payment of such legacy.   The real and the personal were both given to him, in the same manner; and he is directed to pay the complainant's legacy out of the testator's estate.   The personal estate bequeathed to J. B. Borst, therefore, was the pri-

mary fund for the payment of this legacy. And as it appears from the inventory produced in evidence, that the testator left personal estate sufficient to pay the legacy, the complainant was bound to show that this personal estate was exhausted, in the payment of debts of the testator, or that those who were accountable for it, were irresponsible, before she could resort to the real estate, in the hands of those claiming under the mortgage executed by the devisee.

Again; the devisee, who has accepted of the estate devised and bequeathed to him, is personally liable. And as the part of the real estate bid in by him, upon the master's sale, is revested in him, in the same manner as if it had never been included in the mortgage, I am inclined to think the appellant's counsel are right in supposing that this part of the devised premises now remaining in his hands, is, as between him and the complainant, primarily chargeable with the payment of this legacy; in exoneration of those portions of the premises which have been sold to other persons under the decree of foreclosure. Such would undoubtedly have been the case if he had mortgaged only the other three pieces, and had retained the absolute ownership of the parcel which was bid in by himself. And I can see no reason why his suffering that parcel to be sold, and bidding it in himself, should change the equitable rights of the parties. The conclusion at which I have arrived upon the question of payment, renders it unnecessary however that I should further consider this point.

Upon the question of payment, it is proper to take into consideration the fact that this legacy became due and payable about thirteen years before the sale under the decree, in the summer of 1834. And there was nothing to prevent the complainant herself, if she was then single, or her husband, to whom the legacy belonged by virtue of his marital rights, if she was then married, from instituting a suit to charge the estate devised and bequeathed to J. B. Borst, with the payment of the legacy, at the end of one year after he arrived at the age of twenty-one. It is true, the mother's life estate in the property had not then terminated. That, however, was no obstacle to the institution of the

suit; as the interest in the estate devised to J. B. Borst might have been sold, under a decree of this court, for the payment of the legacy, subject to the life estate of the widow therein. Again, the giving of the mortgage upon the real estate, in 1826, was an acceptance of the devise by J. B. Borst. And the testimony shows that the husband of the complainant was in need of the money, if it was still due on this legacy. He had also a right to receive payment of the legacy, by virtue of his marital rights. It is very improbable, therefore, that he should have suffered it to remain unpaid for such a length of time. But what is perfectly satisfactory to my mind that this legacy was paid to the husband of the complainant, in his lifetime, is his admission to H. Manning, the witness, that such was the fact. He had the right to receive the legacy and apply it to his own use. And his receipt for the amount of the legacy would certainly be evidence of the payment, as against the complainant, who survived him; though the legacy would belong to her, as such survivor, provided he had not reduced the same to possession in his lifetime. And there is nothing which renders a written admission of the payment by the husband necessary to establish the fact of payment, as against the surviving wife. His verbal admission of such payment, while he had the right to receive the legacy, and when there was no reason to induce him to make a false statement, is as good as his written receipt for the money; provided there is no doubt of the fact that such admission was made. The witness says that, two or three years before the death of the complainant's husband, he had a conversation with him in relation to a lot of land in which Dodge claimed an interest in right of his wife, and in which land J. B. Borst had bought out the rest of the heirs. Probably it was the same twelve acres which the testator devised to his daughter Caty, the mother of the complainant and of J. B. Borst, by his will. Dodge wanted to sell his interest in that lot to the witness, who advised him to sell it to J. B. Borst. But Dodge told the witness that he did not wish any thing to do with Borst; that he had settled off with him. Something was said by the witness as to the demand due from Borst to him, to which Dodge replied that he had settled all his

demands with him, and did not want any thing to do with him. And the witness in his cross-examination, says he understood Dodge, in this conversation, as referring to the legacy to his wife; for he and Dodge had previously been speaking about that legacy, and witness knew of no other demand. Considering the staleness of this demand, the circumstances under which it was brought forward at the time of the master's sale, and in connection with a similar demand in behalf of another of the legatees, who had previously admitted that his legacy had been fully paid, I am satisfied I shall do no injustice in this case in dismissing the complainant's bill, upon the ground that there is nothing due to her on account of the legacy claimed.

The decree of the vice chancellor must, therefore, be reversed with costs. And the bill must be dismissed, with costs, as to the appellants. But as the defendant J. B. Borst admits her claim to the legacy, and that he purchased his parcel of the premises, at the master's sale, subject to such legacy, she is entitled, as against him, to a decree for the payment thereof, together with her costs in this suit, if she thinks proper to take such a decree; and also to a decree for a sale of the part of the premises which he purchased at the master's sale, to satisfy such legacy and costs.