## DIXON v. ROESSLER.

1. AMENDING PLEADINGS.—A master to whom a case has been referred to take and report the testimony has no authority to make an order amending a complaint so as to bring in other parties defendant.

2. WILLS—ANNUITY.—Under the terms of the will in question construed in the light of surrounding circumstances and the acts of the parties in interest for a number of years, the annuity given plaintiff therein is a charge on the estate generally, and all of the personal estate and other realty having been lost or exhausted, the annuity is now a charge on the lot in question in possession of a stranger with constructive notice of the will and tracing title to the remainderman.

3. ADMINISTRATION.—Where the evidence shows that the personal estate of a testator has been lost or exhausted for 40 years, it is useless to require administration so as to have personal representative of the estate before the Court in an action between a legatee claiming annuity out of the lost realty and the party in possession under legal title.

Before PRINCE, J., Charleston, September, 1906. Affirmed.

Action by Mary E. Dixon against Caroline M. Roessler. The following is the circuit decree, omitting the formal order of judgment. :

"The plaintiff seeks in this action to subject a lot of land formerly owned by Edward Whitty, now owned by the defendant, to the payment of the bequest made to the plaintiff by Edward Whitty, by his last will, a copy of which is attached to and made a part of the complaint. The particular clause of said will on which plaintiff founds her claim and bases her action is : 'In the third place, I will and desire that my daughter, Mary, receive during her natural life out of my estate, $10 per month, and at her death it is to revert to my estate.'

"The defendant at first demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and when her demurrer had been overruled in both the Circuit and the Supreme Courts, she answered to the merits in substance as follows, to wit:

"I. Denies knowledge of information sufficient to form a belief as to whether Edward Whitty was seized and possessed of the tract of land described in the complaint at the time of his death. Admits that Edward Whitty died leaving of force a will alleged in the complaint, but denies that the land mentioned in the complaint was charged with the payment of $10 per month to the plaintiff for life. Alleges that there was sufficient personal property coming into the hands of executors to pay, not only all debts, but all legacies, including this annuity of $10 per month to plaintiff, and that the said executors had kept in their hands and invested for that purpose an amount sufficient to pay off plaintiff's annuity. Denies knowledge sufficient to form a belief as to whether or not plaintiff had been receiving regularly $10 per month from the rent of the lot of land in question up to May 1st, 1894, as alleged in the third paragraph of the complaint.

"II. Pleads the statute of limitations to a part of plaintiff's cause of action, in that more than six years have elapsed

since accrual of the plaintiff's right of action for the monthly installments.

"III. That neither plaintiff, her ancestors nor grantor was in actual possession of the land in question for more than forty years prior to the commencement of this action.

"IV. That the executors of Edward Whitty's will had in hand personal assets more than sufficient to pay all debts and legacies, including this annuity to the plaintiff, and that after paying all debts, the said executors had invested a sum more than sufficiently large to have yielded an income sufficient to pay plaintiff's annuity, and that sum was invested for that purpose. That said investment is a part of the testator's estate, and that defendant is entitled to have this sum duly accounted for before being called on to pay anything to plaintiff's annuity, and to that end, it is necessary to have the personal representative of testator made a party to this proceeding.

"V. That if plaintiff's annuity is a charge on the land in question, it is a lien created by Edward Whitty's will, which is duly of record in the probate court for Charleston County, and that more than twenty years have elapsed since the creation of said lien, and that no note of payment or written acknowledgment of the debt or charge secured by said lien has been filed with the record of said will within twenty years before the commencement of this action, and that this action is barred by section 2449, of the Revised Statutes of 1902.

"VI. That said legacy, if a charge on real estate at all, is a charge on a tract of land in Williamsburg County. If not entirely on that tract, then on that tract equally with the lot of plaintiff, and that the owner of the Williamsburg tract of land is a necessary party to this proceeding.

"After the service of the defendant's answer, his Honor, Judge Memminger, upon the written consent of defendant's counsel, and on motion of plaintiff's counsel referred it to G. H. Sass, master, to take and report the testimony to this Court. This order was filed April 14th,

1905. When the case was called for the purpose of taking testimony, defendant's counsel moved the master to stay further proceedings in the case until the complaint should be amended in accordance with the defenses set up in defendant's answer, and she further moved the master for an order requiring the plaintiff to amend her complaint by making the personal representative of the estate of Edward Whitty and the owners of the Williamsburg tract of land mentioned in the pleadings, parties defendant. The master very properly held that by the order of reference, he was merely empowered to take and report the testimony, and that he was without jurisdiction to pass on the question raised by defendant's motion. To this ruling of the master defendant duly excepted. As I think the master was clearly right in the ruling made, I might as well at this point overrule defendant's exception to said ruling. After this ruling was made, the testimony was taken and reported to the Court, November 17th, 1905. When the case was called by me for hearing, the defendant not only pressed her exception to the master's ruling, hereinbefore referred to, but moved for an order making the personal representative of the estate of Edward Whitty and the owners of the Williamsburg land mentioned in the pleading, parties defendant, and that the case be stayed until the said parties could be served with an amended copy of the summons and complaint. I took this motion under consideration, but in the meantime ordered that the case be argued on its merits.

"I find the following facts: Edward Whitty died on the 13th of September, 1847, leaving of force his last will and testament, a copy of which is attached to the complaint herein; that the will bears date September 2d, 1847, only ten days prior to his death, and was admitted to probate in Charleston District on September 15th, 1847, when William McLaen and James Todd duly qualified as executors thereof; that the bill of appraisement filed October 12th, 1847, shows personal property of $4,157.98; that testator's real estate consisted at the time of his death and at the time

of the making of his will, of the lot of land described in the complaint, a tract of land in Williamsburg County, containing from one hundred (100) to two hundred (200) acres, and an unexpired leasehold estate in a lot at or near the race course tract in Charleston District. How long the lease on the race course tract had to run, does not appear from the evidence. It does appear from the evidence that testator's executors were in charge of and received the rents from the leased property at the track up to 1861. The plaintiff's testimony shows that the buildings on this property were burned many years ago. At the time of his death, testator left survivig him, his widow and two daughters, the plaintiff, who was the older, and Hester Margaret, called 'Margaret' in the will. Mary was at that time about nineteen years of age, and married. Margaret was several years younger, and unmarried. I find that Mary was then married, because of the fact that on October 12th, 1847, just one month after her father's death, William McLaen, executor, who was actively engaged in administering on the estate, paid to her as Mrs. Cammer, her first monthly installment of $10. If she was not married at the time of the making of the testator's will, she was evidently married very shortly thereafter. I think it probable that the fact of her marriage, whether then consummated or merely contemplated for the near future, influenced her father in making the provisions for her contained in the will. Cammer, her first husband, it appears, died a few years after her father, and a few years later she was married to one Dixon. At the time of her father's death, Margaret was unmarried, and remained single for several years thereafter, but at some date between September 21st, 1848, and June 27th, 1850, she was married to one Passalaigue. Passalaigue seems to have lived but a few years, and after 1861, Margaret was married to one Baker. The fact of importance, as I regard it, is that at the time of the making of the will, Margaret was a young girl at home with her mother, while Mary was either then married or was contemplating marriage in the

near future. The widow died at some time during the war
between the States, just when, the evidence fails to disclose.
William McLaen, as executor, had the management of the
estate certainly until the summer of 1853. At the time of
the making of his return to the ordinary, July 22d, 1850,
the balance in his hands due the estate after the sale of the
personal property, was the sum of $2,794.62. His next and
last return was made July 26th, 1853, at which time it ap-
pears that the estate was due him $118.43. This return,
however, shows that on April 21st, 1851, he had invested
the sum of $3,315.00 in thirty (30) shares of stock in the
State Bank at $110.50 per share. It further appears that
on May 27th, 1853, he had realized from dividends on said
shares of stock the sum of $400.85. I suppose this to have
been the accumulation of dividends. His return discloses
the fact that after the return made in 1850, nothing was col-
lected by him from sale of personal property or on debts due
the estate. All the collections thereafter were for rent of
the leased property at race track and rents from the houses
on the property on St. Philip street, which is the property
described in the complaint, and the dividends on the bank
stock heretofore mentioned; and after this return of 1850,
all money paid out by him, except the investment in the
stock of the State Bank mentioned above, was paid to Mrs.
Whitty and her two daughters, the plaintiff and her sister,
Margaret, called by the executor in his return, 'Hester.'
Her full name was evidently Hester Margaret Whitty.
From the 12th day of October, 1847, plaintiff received from
McLaen, as executor, $10 per month. This payment was
made out of the general funds of the estate, the first payment
having been made October 12th, 1847. The investment in
the bank stock, above referred to, seems to have been made
for the benefit of the estate generally, as the income from
said stock was kept in executor's account with the estate, in
which was also kept the items received for rent of the leased
real estate at race tract and houses on the lot described in the
complaint; and from the same fund the executor paid the

widow and Margaret each at least as much as was paid
plaintiff. For the first year, the widow and Margaret each
received more than plaintiff. After the date of this last
return of William McLaen, filed July 6th, 1853, there is no
other return filed until December 24th, 1856, which return
was made by James Todd, as executor. From this return,
it appears that the first money paid out by this executor was
50 cents paid ordinary for certificate of executorship. This
was paid October 17th, 1855. The next item paid by him
was a sum to the ordinary, October 19th, 1855, for copies of
testator's will, inventory of the estate and the returns of
William McLaen, the former acting executor, for the use
of himself and his solicitor. As shown by this return, the
first moneys received by James Todd, as executor, was $120
on October 19th, 1855, from State Bank, being six months
dividend on 120 shares of stock in said bank. The next
item of receipts by him is $120 from the said bank for six
months dividend on 120 shares of stock in said bank. This
was received January 11th, 1856. From this, I infer that
the first item was for dividends due July 1st, 1855, and the
last item was for dividends due January 1st, 1856. There
is a total absence of any evidence of collections and dis-
bursements made between the date of the last return of
William McLaen and the items shown by the first return of
James Todd. In his first return, James Todd refers to
returns of William McLaen, *former acting executor.* From
these facts, I draw the conclusion that William McLaen died
in the summer or early fall of 1855. I infer this because
some one evidently collected dividends on the bank stock due
January 1st, 1855, and as Todd did not, then McLaen must
have done so. These two were the qualified executors. As
the dividends due July 1st, 1855, were not collected by
McLaen, he must have died before it was due, and after
payment to him of the dividend due on January 1st of that
year.

"Since writing the above, my attention has been called by
counsel in the cause, to the fact that on November 10th,

1855, Elizabeth Whitty, the widow of testator, and her two daughters, Mary and Margaret, filed a proceeding in equity against James Todd, as executor of the will of Edward Whitty, and C. B. Northrop, executor of William McLaen. The purpose of this proceeding was to have the said James Todd removed from his office as executor, the bill alleging that William McLaen, who had been solely acting as executor, *had recently died,* and that the sole support of complainants is from the estate of Edward Whitty, and that they prevailed on Northrop, the executor of William McLaen, to make payments to them on account of the estate of Edward Whitty. That Northrop had done so until the last month, when he informed complainants that James Todd, as surviving executor of Whitty, has demanded of Northrop the books and assets of the estate of Whitty, and had notified the said Northrop to make no further payments to complainants. In this proceeding, the complainant seems to have failed, but it appears that the estate of Whitty was indebted to the estate of McLaen in a small sum, which afterwards was paid by James Todd, as executor of the will of Edward Whitty. It is clear, then, that William McLaen did not die until the year 1855, and that up to that time he had the sole management of the estate of Edward Whitty. As McLaen's last return shows an investment of only thirty shares of stock in the State Bank, and as Todd's first return shows that the estate owned 120 shares of stock in the said State Bank, McLaen must have, during the period for which he makes no return, purchased ninety additional shares in said bank for the benefit of said estate. As he had, prior to the date of his last return sold, and otherwise accounted for, practically all the personal property, he could have only received the money with which to purchase this extra bank stock from the sale of the tract of land in Williamsburg County. If this be not true, then we are at a loss to account for the fact as soon as James Todd became the active executor, he collected dividends from 120 shares of stock in the State Bank, when, up to the date of McLaen's last return

he held only thirty shares of stock in the State Bank. The estate's holding in the said bank had, by some means between the intervals mentioned, been increased from thirty to one hundred and twenty shares. As it was the duty of the executor, under the will, to sell the Williamsburg land, I think it entirely safe to presume that they did so, in the absence of evidence to the contrary. The first return made by James Todd, as executor, was filed December 24th, 1856. The next, February 11th, 1858; the third, March 29th, 1859. The fourth, March 23d, 1860, and the last, May 12th, 1861. These returns all show that all the money received by him during these years were received from dividends on the 120 shares of bank stock, the rents from the property in St. Philip street, and rents from the leased property at the race track, and that each month, during these years, he paid to the beneficiaries, under the will of Edward Whitty, the sum of $30. This would be $10 per month for each of them, the said beneficiaries being the widow and the two daughters, Mary and Margaret. Up to the date of Todd's last return, in May, 1861, it is clear from both the returns of McLaen and of Todd, that they had kept the funds of the estate together, and had paid out the income therefrom to Mrs. Whitty and her daughters, Mary and Margaret. That Mary never received exceeding $10 per month. It is clear from the said returns and from the testimony of plaintiff, that up to the date of James Todd's final return, May, 1861, the executor had not set apart and invested for Mary's special benefit, any sum whatever, but from the general income of the estate had paid Mary $10 per month, and had paid balance of said income to Margaret and her mother. Each of the executors treated plaintiff's legacy of $10 per month as a charge on the entire estate. In this method of treating plaintiff's legacy, the other parties in interest fully acquiesced. It is contended on behalf of defendant that plaintiff's testimony is in some respect in conflict with the facts hereinbefore found. It is true that plaintiff testifies that William McLaen died in 1853, but as to

this, I think she is mistaken, for the reasons hereinbefore given. She also says that Mr. Henry Buist, a lawyer, managed the estate after the death of McLaen, when the returns of James Todd show that he managed the estate up to May, 1861. She, however, may not be incorrect in this. It may have been that Henry Buist did manage the estate as attorney for James Todd, executor. It is evident from the said executor's return, that Henry Buist was his attorney. Plaintiff's testimony does not, therefore, necessarily conflict with my finding of facts in this regard. Just when James Todd died is not made to appear, but that he is dead is clearly shown from the fact that after the death of Margaret, in 1892, another person administered on the estate of Edward Whitty. I think it clear, from the testimony in the case, and from my knowledge of the conditions in South Carolina, that at the end of the war between the States, the State Bank was completely insolvent, having been wrecked at the close of the war, and having had its assets to fall into the hands of Sherman's forces. That its entire assets were completely lost about the close of the war is a fact so well known by every one who is at all familiar with the history of this State, that I think I might well take judicial cognizance of it. At any rate, the evidence clearly shows that of the banks in Charleston that survived the war, the State Bank was not one. I think it may be safely assumed and found as a fact that this investment in the stock of the State Bank was lost as a result of the war. I also find as a fact from plaintiff's testimony that for a number of years nothing has been received from the leased property at the race track. I concluded from that circumstance, that the lease on said property had long since expired. We must conclude from the foregoing statement of fact, that at the close of the war there was nothing left of testator's property except the property on St. Philip street. I find as a fact from the testimony of plaintiff, and others, that after the death of the executors, Mrs. Baker, who was the Margaret mentioned in the testator's will, took charge

of this property on St. Philip street, rented it out and from the rent paid her sister, Mary, $10 per month up to the time of her death in 1892, that after the death of Margaret, in 1892, her only son turned over this property to Mr. Dingle, a lawyer, who administered on the estate of Edward Whitty, presumably with the will annexed. Mr. Dingle was the attorney for Mr. Passalaigue, the only son of Mrs. Baker. That Mr. Dingle, as such administrator, had charge of this property on St. Philip street until his death in the fall of 1893, and that all the while he paid to the plaintiff $10 per month from the rents of said property, presumably with acquiescence and consent of Mr. Passalaigue, the only child of Margaret. That after the death of Mr. Dingle, the plaintiff herself collected from the tenant in possession of said property $10 per month, until payment was refused in May, 1894. Perhaps I should, however, state that the only evidence that Mr. Dingle administered on the estate of Edward Whitty, in 1892, after the death of Margaret, is that of plaintiff. No record evidence of this fact was offered, whether or not he had administered on the estate of Edward Whitty, or was merely acting as agent for Mr. Passalaigue after the death of Margaret, Mr. Passalaigue's mother, it is evident from plaintiff's testimony, which is uncontradicted, that Mr. Passalaigue turned over this St. Philip street property to the management and control of Mr. Dingle after the death of Margaret, and it is clear from this, that until he sold this property Mr. Passalaigue recognized the fact that Mary's legacy was a charge upon this property.

"I find that on April 5th, 1904, Mr. Passalaigue, the son of Margaret, sold and conveyed the lot of land described in complaint to John C. Miller and Julian Mitchell, by whom it was conveyed on January 25, 1895, to defendant. That the former deed was without warranty, but that the latter deed was with full warranty. That defendant had constructive knowledge of plaintiff's claim when she bought.

Foregoing are facts developed by the evidence, and it now becomes my duty to construe the will of Edward Whitty.

"Under my construction of this will, testator, by the second item, intended to provide a support for his wife for life out of his entire estate in lieu and bar of her dower, and in addition, to allow her for life the services of the negress, Elizabeth. It is to be noted that by the second item of the will, the testator wills that his wife shall 'have a life interest or her dower out of my estate, either real or personal.' He evidently did not intend to give her a life interest in the estate. Had he intended to give her the estate for life, I think that he would have said that wife should have a life interest in his estate rather than out of the estate. I, therefore, conclude that the support of the wife for life in lieu of her dower was made a charge by this item upon the entire estate of testator. I construe the provision made for Mary, the plaintiff herein, in the third item of testator's will, to constitute a charge upon his entire estate, and that he thereby provides for the payment of $10 a month to the plaintiff during her natural life. By the fifth item of testator's will, he directs his personal property to be sold by his executors, and that whatever remains after the payment of his debts and legacies, be invested for the behoof of his daughter, Margaret, together with whatever will arise from his real estate. I do not think that in using the word legacy in directing the payment of debts and legacies out of the proceeds for the sale of personalty that the testator intended or had reference to the provision made for either Mary or her mother. I recognize the fact that the only pecuniary legacy mentioned in the will is the legacy of $10 a month to Mary, but under my construction, the support of the wife for life out of the estate is as much a legacy as that for Mary, but as neither one of these legacies was a lump sum, payable on the death of the testator, I cannot think that he meant that his executors should pay these legacies at the time of paying the debts. I, therefore, conclude that the word 'legacies' was inadvisedly used in this will,

and cannot be given any effect. By this item, the testator directs that the Williamsburg real estate shall be sold and invested for the benefit of his heirs, etc. This provision standing alone would give both the widow and Mary a direct interest in the proceeds arising from the sale of the Williamsburg property, but it is clear to my mind that the testator did not intend this; that in requiring the proceeds to be invested for the benefit of his heirs, he meant to provide that the proceeds of the sale of the Williamsburg land be invested for the benefit of his wife, by way of contributing to her support for life, and to the payment of Mary's $10 per month, and the remainder to Margaret. In other words, that the provision made for wife and Mary was a charge on the proceeds of the sale of the Williamsburg land, as well as upon the proceeds of the sale of the personal property, and also the land on St. Philip street, including income from said land, and the unexpired lease of the lands at race tract. That the testator meant by this something more than he said, is evident by his use of 'etc.,' and I think that he simply meant to say that this should be invested for his beneficiaries. It is earnestly urged by defendant that Margaret, as she had no children living at the time of the making of the will or the death of the testator, took fee conditional in the property on St. Philip street. I think this true, but I think she took it subject to the charge of her mother's life support and the payment to her sister of $10 per month as long as they should severally live. I think that the testator's environment, at the time of making his will, was not such as to call for a different construction from that I have placed on his will. I think his purpose was clearly to make the support of his wife for life and the payment to Mary for life of $10 per month a charge on his entire estate, and that the remainder of the estate should be Margaret's. I think the fact that the executors, and those immediately interested who evidently knew his mind, gave this construction to this very inartificial will, ought not to be ignored. Since there is no longer any personal estate, or any leasehold estate,

there is nothing left of testator's estate except the property on St. Philip street, and this I hold to be charged with the payment of plaintiff's legacy.

"I am entirely conscious of the general law that requires charges upon the entire estate to be paid out of the personalty in exhoneration of the realty, but in this case there is no longer any personalty, and this doctrine is not now applicable. Had the testator provided for the payment to his wife and Mary a lump sum each, then Margaret could have required this payment to have been made out of personalty in exhoneration of the realty. I cannot see any reason in either law or morals for requiring Mary alone to sustain the loss of the personal property. It cannot be urged that it was any more Mary's duty than it was the duty of Margaret to have the executors to especially set apart such a fund as would have, by its income, made the payment of Mary's legacy. If there had been dereliction of duty on the part of the executors in this respect, both Mary and Margaret acquiesced in such a dereliction. This being true, Margaret, if living, could not be heard to complain now of the methods pursued by the executors, and those claiming under her. Those claiming under her have no more right to complain than she would have had, if living.

"Defendant's motion made before me to have the personal representatives of the estate of Edward Whitty and the present owners of the tract of land in Williamsburg County made parties defendant, and that proceedings be stayed until the parties are brought in, must be overruled for several reasons. Since it has been shown that there is no longer any personal estate for administration, there is no necessity for having plaintiff put to unnecessary expense of making a personal representative a formal party to the suit. It is clear, that there has not been any personal assets of this estate for more than forty years, and it is equally clear that there are now no debts. To require the plaintiff to incur the expense of having a personal representative appointed and made a formal party to the suit,

when no good could come of such a course, it seems to me would be unreasonable. It would be requiring plaintiff to go to the expense for nothing more than an empty form. In the second place, this exception made on the score of defective parties ought to have been made by demurrer, since defect of parties, if any there be, was apparent on the face of the complaint.

"In the third place, defendant having consented to order of reference, waived this objection, and is now estopped to raise it. As to the present owners of the Williamsburg land, they are neither necessary nor proper parties. As I have already shown, the executors were directed to sell this property, and plaintiff's legacy was not directly a charge on this property. Under the terms and conditions of the will, this property is to be treated as personalty, and plaintiff's legacy was a charge on the proceeds of the sale of that property, and not on the property itself. I think the defendant's second defense, to wit: the plea of the statute of limitations, as against all monthly installments that do not become due within the six years before the commencement of this action, should be sustained. This statute bars plaintiff's right of action for all monthly instalments that became due and payable before the 30th of January, 1898. Under this view, the first instalment for which defendant is liable is that due the 31st day of January, 1898. Defendant's third defense is wholly inapplicable to plaintiff's cause of action. Plaintiff is not here seeking to recover land. The defense is overruled.

"In regard to her fourth defense, it has not been shown that the executor made any investment for the special benefit of plaintiff. It has been shown that there are now no personal assets. This defense is overruled, not only for these reasons, but for the reasons already stated in this decree. In her fifth defense she alleges that if plaintiff's legacy was a charge or lien on this land, the lien has been lost by reason of the fact that there has never been filed in the office where the will is recorded a note of any payment on account of

any written acknowledgment of the debt secured by such lien, as provided by section 2449 of the Civil Code. Even if section 2449 of the Civil Code was intended to apply to liens of the character of the one under consideration, of which I have doubt, it was clearly not intended to have a retroactive effect on liens of this character. This defense is overruled.

"As to her sixth defense, I have already decided that this claim was never a direct charge on the Williamsburg land, as the executors were, by the will, required to sell this property and invest the proceeds. I think that plaintiff's legacy was made a charge upon the proceeds of this land when invested, together with the property of testator.

"In the absence of any evidence to the contrary, the presumption is that the executors did their duty and sold said land. It was certainly not testator's intention that this land should be sold subject to any charge of this kind. This defense is overruled.

"This action was commenced on the 30th day of January, 1904. Lis pendens was filed May 9th, 1904. In her complaint plaintiff alleges that defendant is in possession of the lot of land described thereon, and had been in possession thereof since January 5, 1895, and as this is not denied by answer, it is taken as an admitted fact. It, therefore, follows that defendant has been receiving and enjoying the income from said property. As we have held, this income charged with the payment of the legacy defendant must be held to have reecived of said income the sum of ten dollars per month to use of plaintiff. Defendant is, therefore, indebted to plaintiff for ten dollars per month for money had and received to her use ever since defendant went into possession, to wit: January 5th, 1895. But plaintiff's right of action is barred by the six years' statute of limitations for all sums which did not become due within six years before commencing her action. She cannot, therefore, recover in this action for any sum due prior to 30th January, 1898. The first monthly instalment due from defendant to plain-

tiff, which is not barred, is that due January 31st, 1898, and defendant owes plaintiff $10 for January, 1898, and $10 per month for every month since, together with interest on each monthly instalment from the date it became due. Up to 31st day of August, 1906, she was owing plaintiff one hundred and three monthly instalments of $10 each. This would aggregate the sum of $1,030, besides accumulated interest on the several instalments since maturity. This aggregates the sum of $309.42 for interest. Total of principal and interest is $1,339.40. This was the sum defendant was due plaintiff on August 31, 1906, and for which plaintiff is entitled to judgment against her."

From this decree defendants appeal, and the points raised by the exceptions are practically covered by the *syllabi*.

*Messrs. Burke* and *Erckmann,* for appellants, cite: *Pecuniary legacies are not a charge on realty:* 51 S. C., 375; 2 McC. Ch., 395; 5 S. C., 218; 2 S. C., 383; 22 S. C., 101; 1 Pet., 585; 14 Rich. Eq., 245; 19 Ency., 1349; Speers Eq., 518; 17 S. C., 545; 6 Rich. Eq., 93; 59 Vt., 497. *Owners of Wiliamsburg property should be made parties:* 9 S. C., 436; Code of Proc., 143; Rich. Eq., 239.

*Messrs. Young & Young* and *W. J. Fishburne,* contra, cite: *Is the legacy a charge on the lots?* 6 Wheat., 229; 19 Ency., 1349, 1350, 1351; 2 Binney, 525; 27 S. C., 209; 46 S. C., 159; 51 S. C., 366; 1 Ves. Sr., 499; 1 Ver., 411; 2 Ver., 228; 7 H. L., 703; 19 Ency., 1352, 1353; 37 S. C., 485; 17 Ency., 23, 24; 48 S. C., 290; 128 Fed. R., 828; 28 S. C., 331; 18 Ency., 768. *As to making personal representative a party:* 11 Rich., Eq., 402; 1 Rich. Eq., 1; 48 S. C., 161, 296; 62 S. C., 426; 69 S. C., 38. *This question cannot be raised after demurrer:* 28 S. C., 450; 66 S. C., 342. *Of what Court will take judicial notice:* 17 Ency., 907, 908; 93 Mo., 452. *20-year limitation of lien does not apply here:* 31 S. C., 1; *Curtis* v. *Renneker,* 34 S. C.; 185

U. S., 55; 30 S. C., 381; 71 S. C., 391; 7 S. C., 69; Speers Eq., 233; 7 Rich. Eq., 54.

March 26, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This Court is satisfied with the conclusion of the Circuit Judge and the reasoning on which it rests. We express no opinion, however, as to the character of the interest or estate which the daughter Margaret took in the lot on St. Phillip street, as that point is not involved in the appeal.