8032

SHIRED v. NESBIT.

1. WILLS.—Under the provisions in a will devising all of testator's property to his two sons—and providing further, that "it is my wish that my sons shall take care of my * * * wife and allow her to live at my house," and at her death divide the property between them, the sons take the property, subject to the charge for the care of the mother.

2. IBID.—WAIVER.—The widow's moving to another house and there living does not constitute waiver or abandonment of her claim.

3. IBID.—One accepting a devise so burdened assumes the personal obligation to take care of the widow during her life, and she is entitled to a judgment against the devisee for the aggregate arising from an allowance of a reasonable sum for each year's support. In arriving at this amount, the condition in life of the parties, the value of the property, and the intention of the testator are important elements.

4. IBID.—The income and the land itself is liable for this charge of the care of the widow.

5. INCOME.—In absence of proof of income rental value may be taken as the measure of income.

Before GARY, J., Greenville, December, 1910.    Reversed.

Action by Caroline Shired against C. D. Nesbit, Fletcher Shired and Wm. Shired.    Defendants appeal.

*Mr. Wm. G. Sirrine,* for appellants.

*Mr. Adam C. Welborn,* contra, cites: 46 S. C. 183; 76 S. C. 431.

November 11, 1911.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    Henry Shired died on January 12, 1902, leaving a will in which he disposed of his property in these words: "Item one, I will and bequeath to my sons William and Fletcher Shired all my property both real and personal.    Item two.    It is my will that my sons, William and Fletcher Shired, shall take care of my beloved wife, Caroline Shired, and allow her to live at my home, and at her death the said William and Fletcher shall divide my property equally between themselves."

The property consisted of a half acre lot near the town of Piedmont, on which the testator resided, and household furniture, the latter being of insignificant value.    The widow retained her residence on the lot for a few months after her husband's death and then moved to the home of a son by a former marriage, where she still resides.    William and Fletcher Shired, sons of the testator by a former marriage, held the land under the will until December, 1908, when by separate deeds they conveyed it to the defendant C. D. Nesbit.    Some time after Nesbit acquired title, the

widow Caroline Shired brought this action against William and Fletcher Shired and the grantee, Nesbit, alleging in substance that by accepting the devise under the will William and Fletcher Shired had undertaken to furnish her with a reasonable support and that the land was charged therewith; and that the defendants, William and Fletcher Shired, had not contributed anything to her support and had not allowed her to live in the house. The defense consisted of a general denial and the allegation that the plaintiff by voluntarily abandoning the premises had forfeited whatever claim she may have had.

The cause was referred to the master, who, after taking testimony, reported that the land was charged with the support of the widow, and that considering the humble station in life of the testator and his family he did not intend that the widow should receive for her support from the sons more than the rental value of the land, which he found to be $36 per annum. The master recommended a sale of the land for the payment of the accrued charge, the purchaser to take the land subject to the charge in favor of the widow of $36 per annum for her future support. The Circuit Judge on hearing the case held $150 per annum to be reasonable support for the widow, and decreed that she should have judgment against William and Fletcher Shired for arrears of her support at the rate of $150 per annum, commencing six months after the date of the death of the testator. On all other points the report of the master was confirmed. The appeal brings up for review all the issues passed on by the master and the Circuit Court.

First: Did the will of the testator charge the land with the care of his widow? It will be observed that the whole estate was devised to the sons, and unless it was charged with the care of the widow then she was left without any means of support. Such an intention should be attributed to the testator only when clearly

expressed. The context, read in the light of the circumstances, must be construed to mean that the sons held the estate subject to the charge for the care of the widow. *Bank of Florence* v. *Gregg,* 46 S. C. 169, 24 S. E. 64; *Dixon* v. *Roessler,* 76 S. C. 415, 57 S. E. 203; *Colton* v. *Colton,* 127 U. S. 300, 32 L. ed. 138.

Second: The abandonment by the widow of the house did not constitute waiver or abandonment of her claim to be taken care of, for the requirement that the sons should take care of her was not made conditional on her living at the home.

Third: The obligation imposed by the will on the sons was not limited to the rental value of the land. The rule is that one who accepts a devise coupled with an obligation binds himself by his acceptance of the devise to discharge the obligation. *Porter* v. *Jackson* (Ind.), 48 Am. St. 704; *Dodge* v. *Manning* (N. Y.), 11 Paige 334; *Steele* v. *Korn* (Wis.), 118 N. W. 207; *Case* v. *Hall* (Ohio), 25 L. R. A. 766; *Davidson* v. *Coon* (Ind.), 9 L. R. A. 584, and note; 2 Jarman on Wills 584. Hence when the sons accepted the devise they assumed the personal obligation to take care of the widow during her life, and the plaintiff is entitled to a judgment against them for the aggregate arising from an allowance of a reasonable sum for each year's support.

There is a total lack of evidence as to what is necessary to "take care of" the widow in the sense in which the testator used that expression. The only shred of evidence touching the subject is the statement by the witness Searight, "It takes about $150 a year to support her." But we think the record clearly shows that the testator had no intention of imposing on his sons the entire burden of supporting his widow without respect to her own exertions. The testator and his family were very poor, living in the humblest circumstances by their labor, and the widow still

earns wages as a laborer. The only direct evidence of the value of the lot disposed of in the devise is that it is worth about $125 to $150. The defendant Nesbit testified that he paid $175 for it, a price in excess of its value, because it adjoined his land. The witness Searight gave it as his opinion that the house and lot would rent for $75 per annum, but he gave no reason whatever for this opinion. Even if the value of the property be placed as high as $175, the charge of $150 per annum against the sons to "take care of" the widow is out of proportion when set against such valuation; for the property would be entirely consumed by the charge for support in less than two years. It is clear, in view of the small value of the property and the station and habits of life of the parties concerned, that in requiring the sons to "take care of my beloved wife" the testator contemplated exertion on her part and contribution to her support by her own labor. But there is no evidence whatever of the earning capacity of the widow and nothing in the record upon which a just conclusion can be reached as to what amount the sons should contribute to her support.

Fourth: Under the rule laid down in *Dixon* v. *Roessler,* 76 S. C. 415, 57 S. E. 203, the charge for the care of the widow extends to the whole estate—to the income derived from the land as well as to the land itself—and the defendant C. D. Nesbit is liable to the plaintiff for the income received by him since his purchase. There was no evidence of the income actually received by Nesbit from the property. The master and the Circuit Judge agreed in the view that $36 a year was a fair rental value of the land, and there is nothing in the evidence warranting the Court in disturbing this conclusion. In the absence of evidence of the actual income, the rental value will be taken as the measure of the income from the property. *Griffin* v. *Griffin,* 32 S. C. 256, 64 S. E. 160.

It is the judgment of this Court that the judgment of the Circuit Court be set aside and the cause remanded for the purpose of taking evidence and ascertaining what sum should be allowed to take care of the widow.